UNITED STATES COURTS OF APPEALS
FOR THE SECOND CIRCUIT

———————————————

Docket # 22-2756

ABEEB BALOGUN,

Plaintiff-Appellant,

v.

NEW YORK STATE DIVISION OF HUMAN RIGHTS, GINA MARTINEZ,
ELIZABETH ORTIZ-FELICIANL, IRIS CARRASQUILLO, MARLENY
RUBIO, WILLIAM PLOSKI, ALI JAFRI,

Defendants-Appellees.

———————————————————————————————

On Appeal from the United States District Court
for the Southern District of New York

—————————————————————

Brief of Appellant Abeeb Balogun

Abeeb Balogun
Attorney for Appellant-Plaintiff
172-17 Jamaica Avenue 5B
Jamaica, NY 11432
(443) 600-0562

ORAL ARGUMENT REQUESTED

## **TABLE OF CONTENTS**

Pages(s)

TABLE OF CONTENT……………………………………………………………ii

TABLE OF AUTHORITIES....…………………………………………….....v

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION….1

STATEMENT OF ISSUES PRESENTED FOR REVIEW………………………..1

STATEMENT OF CASE……………………………………………………..2

STATEMENT OF FACTS……………………………………………………3

STANDARD OF REVIEW……………………………………………….....16

I.     ARGUMENT……………………..……………………………….....16

II.    THE DISTRICT COURT ERRED IN GRANTING DEFENDANTS'MOTION BY FAILING TO FOLLOW THE SUMMARY JUDGEMENT…………………………………………16

     A. Summary judgement is inappropriate Where there are genuine issues of material facts at dispute …………………..……………17

     B. Summary judgement is inappropriate where the district court construe evidence and draw inferences in favor of the moving party……………………………………………………….....19

III.   THE DISTRICT COURT ERRED IN GRANTING DEFENDANTS' SUMMARY JUDGEMENT MOTION FOR BALOGUN'S TITLE VII CLAIM……………………………………………………..21

     A. The District Court Erred by Dismissing Balogun's Title VII Discriminatory Extension of Probation Claim…………………..22

        i.  Balogun Demonstrated Satisfactory Performance During his Initial Probation period……………………………….....23

ii. Balogun established inference of discrimination for defendants' extension of his probationary period...............25

iii. Defendants failed to articulate a legitimate non-discriminatory reason for extending Balogun's probation.......................29

iv. Defendants proffered reasons for extending Balogun's probation are pretextual...........................................31

B. The District Court Erred by dismissing Balogun's Title VII Discriminatory Termination Claim..........................................32

i. Balogun demonstrated satisfactory performance during his extended probation.........................................32

ii. Balogun established inference of discrimination for Defendants' termination of his employment.......................33

iii. Defendants failed to articulate a legitimate non-discriminatory reason for terminating Balogun's employments.............................................................38

iv. Defendants proffered reason for terminating Balogun's employment are pretextual....................................39

IV. THE DISTRICT COURT ERRED IN GRANTING DEFENDANTS' SUMMARY JUDGEMENT FOR BALOGUN'S TITLE VII HOSTILE WORK ENVIRONMENT CLAIM............................40

V. THE DISTRICT COURT ERRED IN GRANTING DFENDANTS SUMMARY JUDGEMENT FOR BALOGUN'S RETALIATION CLAIM...............................................................................45

A. Plaintiff Established His Engagement in Protected Activity.........46

iii

B. Balogun Established Causal Connection Between His Protected Activities and Defendants Discriminatory Conduct.................48

VI. THE DISTRICT COURT ERRED IN DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER BALOGUN'S STATE LAW CLAIMS……………………………......................................49

A. The district court has jurisdiction over Balogun's state law claims…………………………………………………..49

B. Balogun established a prima facie case for breach of contract claim……………………………………………………………...50

C. Balogun established a prima facie case for his promissory estoppel claim…...........................................................................52

D. Balogun established a prima facie case for his interference with contractual relationship claim………………………………53

E. Balogun established a prima facie case for his negligent supervision claim……………………………………….................54

F. Balogun established a prima facie claim for his intentional infliction of emotional distress claim……………………………55

CONCLUSION………………………………………………….................57

CERTIFICATE OF COMPLIANCE………………………………….............58

CERTIFICATE OF SERVICE…………………………………………………59

iv

# TABLE OF AUTHORITIES

**CASES**              **Page(s)**

*Agosto v. N.Y.C. Dep't of Educ.*,
 982 F.3d 86, 101-02 (2d Cir. 2020)…………………………………………..40

*Bender v. City of New York*,
 78 F.3d 787, 790 (2d Cir. 1996)…………………………………………...55

*Brod v. Omva, Inc.*,
 653 F.3d 156, 164 (2d Cir. 2011)……………………….......17, 19, 20, 47

*Brown v. Eli Lilly & Co.*,
 654 F.3d 347, 358 (2d Cir. 2011)………………………………………17, 19

*Carnegie-Mellon Univ. v. Cohill*,
 484 U.S. 343, 351 11988)……………………………………………….50

*Celotex Corp. v. Catrett*,
 477 U.S. 317, 323 (1986)………………………………………………17, 19

*Cohen v. Davis*,
 926 F.Supp. 404 (S.D.N.Y. 1996)……………………………………….53

*Collins v. N.Y.C. Transit Auth.*,
 305 F.3d 113, 118 (2d Cir. 2002)……………………………………..21

*Combs v. Plantation Patterns*,
 F.3d 1519, 1527-28 (11th Cir. 1997)…………………………………21

*Crawford v. Metropolitan Government of Nashville & Davidson County*,
 555 U.S. 271 (2009)…………………………………………………..46

*Dube v. State Univ. of New York*,
 900 F.2d 587, 595 (2d Cir.1990)………………………….................50

*Finley v. Giacobbe*,
 79 F.3d 1285, 1295 (2d Cir. 1996)……………………………………53

*Flowers v. Crouch-Walker Corp.*,
   552 F.2d 1277, 1283 (7th Cir. 1977)……………………………………………23

*Gordon v. N.Y.C. Bd. of Educ.*,
   232 f.3d 111, 117 (2d Cir.2000)…………………………………...............48

*Graham v. Long Island R.R.*,
   *230 F.3d 34, 39 (2d Cir. 2000)*…………………………………………….25

*Harris v. Forklift Systems, Inc.*,
   510 U.S. 17, 21 (1993)…………………………………….................40, 44

*Hicks v. Baines*,
   593 f. 3D 159, 164 (2d Cir.2010)…………………………………………..45

*Hicks v. St Mary Honor Center*,
   970 F. 2d, at 493 (1996)…………………………………………....30, 38, 48

*Huhn v. Koehring Co.*,
   718 F.2d 239, 244 (7th Cir. 1983)…………………………………………23

*Howell v. New York Post Co.*,
   81 N.Y.2d at 122, 596 N.Y.S.2d 350, 612 N.E.2d 699……………………55

*JP Morgan Chase v. J.H. Elec. of New York, Inc.*,
   239, 893 N.Y.S.2d 237 (2d Dep't 2010)…………………….................50

*Kuebel v. Black & Decker Inc.*,
   643 F.3d 352, 358 (2d Cir. 2011)…………………………………………..16

*Little John v. City of New York*,
   795 F.3d 297 (2d Cir. 2015)……………………………………33, 40, 44, 45

*1077 Madison St., LLC v. Daniels*,
   954 F.3d 460, 463 (2d Cir. 2020)…………………………………………..16

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)…………………………………………….................21

*Meiri v. Dacon*,
 759 F. 2d 989 (2nd Cir. 1985)………………………………………………...23

*Nader v. Gen. Motors Corp.,*
 25 N.Y.2d 560, 569, 307 N.Y.S.2d 647, 255 N.E.2d 769 (N.Y.1970)…….55

*Rogers v. Town of Islip,*
 230 AD2d 727 (1996)……………………………………………………...52

*Risco v. McHugh*,
 868 F. Supp. 2d 75 (S.D.N.Y. 2012)………………………………………25

*Rojas v. Florida,*
 285 F.3d 1339, 1324 (11th Cir. 2002)……………………………...21, 31, 39

*Ross v. Mitsui Fudosan, Inc.,*
 2F. Supp. 2d 522 (S.D.N.Y. 1998)…………………………………….........54

*Senno v. Elmsford Union Free School District*,
 812 F.Supp.2d at 467 (S.D.N.Y. 2011)……………………………………17

*St. Mary's Honor Center et al. v. Hicks,*
 509 U.S. 502 (1993)……………………………………………….........31, 39

*Texas Department of Community Affairs v. Burdine,*
 450 U.S. 248, 252-53 (1981)……………………………………………...29, 30

*Vaughn v. Phx. House New York, Inc.*,
 957 F.3d 141, 146 (2d Cir. 2020)………………………………………..50

*Zeak v. United States*,
 11 Civ. 4253 (KPF) (S.D.N.Y. 2015)……………………………….........54

**STATUTES**

Civil Rights Act of 1964 Title VII, 42 U.S.C. § 2000e, et seq…………………2, 45

New York Civil Service Law § 4.5……………4, 12, 18, 24, 34, 37, 42, 43, 51, 53

New York Civil Service Law § 1.2(b)(2)………………………………….........43

**OTHER AUTHORITIES**

28 U.S.C. § 1291…………………………………………………………………...1

28 U.S.C. § 1331…………………………………………………………………...1

28 U.S.C. § 1367……………………………………………………………1, 49

Fed. R. Civ. P. 56…………………………………………………..16, 17, 28, 50

**STATEMENT OF SUBJECT MATTER AND APPELLATEJURISDICTION**

The Southern District of New York ("SDNY") has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law. The SDNY also has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because it is an appeal of a final order that granted summary judgement to Defendants-Appellees New York State Division of Human Rights, et al. ("Defendants") with Plaintiff-Appellant Balogun ("Balogun")'s Title VII claims and dismissed his related state law claims. Balogun timely appealed by filing his notice of appeal on October 13, 2022, within 30 days of the district court's order of September 16, 2022.

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**

1. Whether the District Court erred in granting summary judgement when Balogun's pleadings and evidence on record showed that there are disputed material facts with regard to Balogun's claims.

1

2. Whether the District Court erred in ignoring certain evidence of Balogun, made inferences in favor of Defendants, the non-movants, and construed evidence in favor of Defendants in granting summary judgement.

3. Whether the District Court improperly dismissed Balogun's federal law claims and erred in failing to exercise supplemental jurisdiction over his state law claims.

4. Whether the record supports the district court's factual findings.

## STATEMENT OF CASE

On December 11, 2020, Balogun filed this case in the SDNY seeking relief against Defendants for discrimination based on race, sex, and national origin; hostile work environment; and retaliation in violation of Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e-2 and related state law claims including breach of contract, promissory estoppel, interference with contractual relationship, negligent supervision, and intentional infliction of emotional distress. (A. 70; Amend. Compl. ℙ 11).

Defendants served their motion for summary judgement on December 29, 2021 in accordance with the district court's scheduling order. On September 16, 2022, Judge Lorna Schofield granted Defendants' motion as to Balogun's Title VII claims and dismissed his state law claims without prejudice, declining to exercise discretionary supplemental jurisdiction. Balogun is hereby appealing the final

2

order and judgment disposing of all claims in the case. (A. 17; District Court order and opinion ("Op") at pg. 1).

## STATEMENT OF FACTS

Most of the relevant facts regarding the history of Balogun's employment with the New York State Division of Human Rights ("DHR") in this case are disputed. See Balogun's Memorandum in opposition to Defendants summary judgement motion (A. 44-46; "Pl's Memo" at pg. 3-5). Balogun, a Black male commenced his position as a Human Rights Specialist 1 ("HRS 1") with the Housing Investigation Unit ("HIU") of DHR. (A. 130; Ex. 1). According to the appointment letter, the position was subject to the New York State Civil Service Law, Rules, and Regulations. It also required Balogun to serve a 52-week probationary period and that Defendants provide quarterly review while abiding by the Civil Service Laws ("CSL") in their guidance, supervision, support and evaluation of his performance and behavior during his employment. *Id.*

DHR is a New York State ("NYS") agency created to enforce the New York State Human Rights Law ("NYSHRL") which prohibits discrimination in the provision of housing, employment, credit, and public accommodation through investigation, prosecution and adjudication of discrimination complaints statewide. HRS 1 employees investigate allegations of housing discrimination and prepare written reports. About Us | Division of Human Rights (ny.gov) . Upon submitting

the final report to their direct supervisor, a Human Rights Specialist 2 ("HRS 2"),

the HRS 1 is deemed to have completed investigation of that case.

In accordance to CSL, all probationary employees are given quarterly

performance evaluation for which a probation report is generated. law (Civ. Serv. §

4.5). In the report, the employee is given performance ratings in 14 categorical

areas of assessment and a recommendation to either retain, terminate, continue or

extend the employee's probation is made. (A. 133-135; Ex. 6). The performance

rating can either be "excellent," "very good," "good," "fair" or "unsatisfactory,"

and supervisors are further required to provide an explanation in the remark section

of the report together with supporting documentation for any "excellent" or

"unsatisfactory" rating. *Id.* During Balogun's initial probationary period from April

26, 2018-April 25, 2019, he received quarterly reviews, the fourth of which also

represented the final and cumulative assessment of his performance for the entire

52-week period. *Id.*

### Initial probationary period 4/26/2018 – 4/25/2019

On or about July 26, 2018 during Balogun's first quarterly probation review,

he did not receive unsatisfactory rating in any of the 14 areas of performance

evaluation including overall quality of work, timeliness of work, relationships with

others, judgement, initiative & resourcefulness, job interest, capacity for

development, conduct, appearance, dependability, leadership potential, attendance,

4

oral expression, and written expression. (A. 73; Amend. Compl." ⁋ 18). Although, Allison Schweir ("Schweir"), Balogun's direct supervisor at the time recommended in the remark section of the report that he focus on improving his case production and pay close attention to spellings and grammar, there was no indication in the report that Balogun's writing was in anyway deficient as evidenced by the satisfactory rating he received. (A. 133-135; Ex. 6). Moreover, Schweir also stated that Balogun was personable, friendly, demonstrated a developing knowledge of the human rights law, demonstrated eagerness to seek guidance and learn, and interact with all parties in a pleasant and professional manner. *Id.*

Prior to Balogun's first quarterly evaluation, he submitted case# 10192811 with a finding of probable cause. Defendant Ortiz-Feliciano, the director of investigation at the time, insisted that Balogun rewrite the report with a lack of probable cause determination because she did not believe that the evidence supported his probable cause finding in the case. (A. 72-73; Amend. Compl." ⁋ 17). However, upon reviewing the facts and evidence with Erin Sobkowski ("Sobkowski"), an attorney in charge of probable cause review, she agreed that the evidence was sufficient and proceeded to approve the probable cause finding. *Id.* Thereafter, Defendant Ortiz-Feliciano accused Balogun of getting his emotions involved in the investigation and advocating for the accuser because the

complainant in that case was of the same protected classes as him. *Id.* Balogun asserted that Defendants' animosity towards him stemmed from the circumstances surrounding this subject case and triggered the discriminatory treatment that he endured during his employment at DHR as evidence by the continuous harassing conduct and differential treatment that the Defendants individually and collaboratively subjected him to until he was subsequently terminated. *Id.*

On August 3, 2018 , Defendant Ortiz-Feliciano met with Balogun to inform him of, and congratulate him for getting Sublowski's approval for the above-mentioned case# 10192811. (A. 73;  Amend. Compl." ⁋ 19). Defendant Ortiz-Feliciano informed Balogun during the meeting that his seven case submissions were the highest number of cases submitted by any investigator for the month of July 2018 and that she expected him to submit at least seven cases per month moving forward. Balogun responded by clarifying that he could only take credit for five of the seven cases since an intern conducted the investigation on one of the cases and one was a lack of jurisdiction ("LOJ") case which are considered easy cases because they did not require any investigation to be completed but are counted towards total case production. *Id.* Nonetheless, on or around 8/27/2018, Defendant Martinez, the deputy commissioner at the time, met with Balogun and told him that she was informed by Defendant Ortiz-Feliciano that Balogun told her

that he could not close more than five cases a month, but this was a false misrepresentation. (A. 73-74; Amend. Compl. ⁋ 20).

On August 31, 2018, Defendant Ortiz-Feliciano told Defendant Ploski to assign three LOJ cases to Balogun and asked that he completed them by the end of the day. At the time, Balogun asked Defendant Ploski whether he wanted him to set aside case# 10191118, the last of the four (4) cases that Defendant Ortiz-Feliciano mandated him to complete by the closing of that work day, and to first complete the three LOJ cases. (A. 74; Amend. Compl." ⁋ 21). Defendant Ploski responded by instructing Balogun to first complete the last mandated case and work on the three LOJ cases afterwards. *Id.* Balogun completed the last mandated case past his regular work hours and was unable to get to the LOJ cases by the end of the workday. *Id.* However, upon arriving at work the following Monday September 2, 2018, the three LOJ cases had been removed from Balogun's office desk without any notice and before he could complete them. *Id.* Contrary to Defendants assertion in their summary judgement motion, Defendant Ploski neither monitored Balogun to ensure that he never had fewer than 20 open cases nor did Balogun always had 20 cases on his caseload, and nothing in the record showed that Defendant Ploski gave Balogun credit for those three LOJs. (Def's Memo at pgs. 38-41).

About a week thereafter on September 7, 2018, Defendant Ploski unreasonably accused Balogun of being "Lackadaisical" and not appreciating the time-sensitive needs of the unit for failing to complete the three LOJ cases. (A. 74; Amend. Compl." ⁋ 22). Nonetheless, on September 13, 2018, Defendant Ploski apologized to Balogun for his choice of words and informed that he was not going to say anything about the three LOJ cases, but that he only stressed it because he had to go back and report to Defendant Ortiz-Feliciano, who had earlier instructed him to scold Balogun for not completing the three LOJ cases on 8/31/2018. (A. 75; Amend. Compl. ⁋ 23). When Balogun complained to Defendant Ploski about being subjected to unfair treatment on the unit because of his race, sex and national origin, Defendant Ploski responded by stating that, "even if Balogun was justifiably upset with any superior employee at HIU, he should keep it in his mind, swallow his pride, and not state how he felt; and further informed Balogun that they could not have people that are unhappy or felt abused on the unit." *Id.*

About October 26, 2018, Defendants Ploski and Ortiz-Feliciano conducted Balogun's second quarterly probation review for the period July 27, 2018 to October 26, 2018. (A. 140-142; Ex. 7). As evidenced in the report, Balogun did not receive unsatisfactory rating in any of the 14 categorical areas of performance evaluation. Although, in the remark section of the report, Defendant Ploski identified increasing knowledge of human rights laws, getting acclaimed with

speaking with difficult clients, and developing writing skills for complex cases as areas that Balogun can improve on, there was no indication in the report that Balogun's writing was in anyway deficient. *Id.* Moreover, Defendant Plsoki also stated in the report, that Balogun is a dedicated hard worker that timely completes his tasks, that his writing and productivity had improved very well, and that he is able to work independently, and that he seeks guidance from his supervisors when appropriate. *Id.*

On January 28, 2018, Defendants Ploski and Carrasquillo conducted Balogun's third quarterly probation review for the period October 27, 2018 to January 26, 2019. (A. 139-141; Ex. 8). In the generated report dated Balogun did not receive any satisfactory rating in any of the 14 categories of performance evaluation. Although, in the remark section of the report, Defendant Ploski identified case production as area needing improvement, there was no indication in the report that Balogun's was inadequate in any of the categories of performance evaluation as evidenced by the satisfactory ratings in all categories. Moreover, Defendant Plsoki also stated in the remark section of the report that Balogun's writing is good and that he continued to improve in his ability to handle complex cases. *Id.*

On April 15, 2019, Defendants Ploski and Carrasquillo conducted Balogun's fourth quarterly probation review for the period January 27, 2019 to April 25,

2019, which also represented Balogun's 52-week probationary term evaluation. (A. 142-144; Ex. 9)  In the generated report, Balogun did not receive unsatisfactory rating in any of the 14 categories of performance evaluation and contrary to the Civil Service Rule ("CSR") 4.5, Balogun was not retained but his probationary term was rather extended. *Id.* Paradoxically, during the April 15, 2019, review meeting, Defendants Ploski and Carrasquillo informed Balogun that they think he is a good worker, that they were satisfied with his work and work product, and that they recognized that he was assigned many complex cases during his probation period but that they decided to extend his probation for not completing 108 cases to give him an opportunity to show that he was capable of completing an average of nine cases in a month period. (A. 162-167; Ex. 47 11:45-11:55, 13:15-13-57). Defendants Ploski and Carrasquillo further informed Balogun that if he accepted the offer for extended probation, the Human Resources ("HR") would procedurally extend his probation for six months, but they will make his appointment permanent after he served the minimum required three months of extended probation on the condition that he completed an average of nine cases per month during for the first quarter extended probation period from April 26, 2019 to July 25, 2019. *Id.*

On multiple occasions including between April 15, 2018 to April 17, 2018, Balogun met with Bellew McManus, a staff attorney and the union representative who informed him that his rights were limited as a probationary employee and

cannot file a union grievance either. (A. 77; Amend. Compl. ⁋ 29). McManus

further told Balogun that he spoke with the HIU Management and was told that

they extended his probation for not completing 108 cases during the 52-week

probationary period and that they will pass him at the end of the first quarter of his

extended probation if he completed 27 cases during the period. *Id.* Balogun further

complained to McManus that he did not believe he would receive a fair evaluation

if he remained at HIU for his extended probation due to the unfair treatment he was

being subjected to because of his protected classes. *Id.* McManus advised Balogun

that he requested a transfer from HR because he should be given a new assignment

at one of the Agency's regional offices for his extended probation per civil service

rule. *Id.*

      Between April 15, 2019 and April 17, 2019, Balogun met with Defendant

Jafri, the HR Director and requested a new assignment at one of DHR's regional

offices for his extended probation. (A. 78; Amend. Compl. ⁋ 30).  Balogun also

complained to Defendant Jafri that he did not believe he would receive a fair

evaluation if he remained at HIU for his extended probation due to the unfair

treatment he was being subjected to at the unit because of his protected classes. *Id.*

Defendant Jafri denied Balogun's request stating that they have been told by the

Governor's Office of Employment that an exception to Civil Service Rule 4.5

allows them not to change an employee's assignment for extended probation if it

was not possible. *Id.* The record showed that there is no such exception under Rule 4.5 (See Civ. Serv. § 4.5), but Defendants refused to transfer Balogun, and rather kept him on the same unit under direct supervision from Defendant Rubio.

***Extended probation period April 26, 2019 – October 25, 2019***

On July 26, 2019, Defendants Rubio and Carrasquillo conducted Balogun's probation review for the first quarter of his extended probation April 26, 2019 to July 25, 2019. (A. 145-147; Ex. 10). In the generated report Balogun did not receive unsatisfactory rating in any of the 14 categories of performance evaluation and evidence showed that he completed 27 cases, but his extended probation was questionably continued for failure to meet case production requirement. *Id.* During a subsequent meeting with management regarding this evaluation on August 1, 2018, Defendant Rubio admitted that she intentionally excluded two cases from Balogun's case completions, claiming that the cases had to have been closed before they can be counted towards his total case production for the period. (A. 168-173; Ex. 48 17:13-23:02). Defendant Martinez buttress Defendant Rubio's claim and incorrectly insisted that the term "complete" in the tasks and standards for HRS 1s meant that the cases had to have been officially closed in the system and not just submitted before they can count towards Balogun's total case production. *Id.* When Balogun complained to Defendant Martinez about being singled out and subjected to unfair treatment at the HIU because of his protected classes, he was met with

threats and intimidation. Defendant Martinez responded by telling Balogun that

they have a flow at the HIU and that he needs to get with the program or go

somewhere else if he is unable to get along with his supervisors. *Id.* Defendant

Martinez further told Balogun that she would talk to the directors at the other

regional offices and see about moving him so that he could get a fresh start.

Balogun was neither retained nor transferred to another region but rather

compelled to remain on the same unit and to continue with extended probation. *Id.*

After the August 1, 2019 meeting with Defendant Carrasquillo, Martinez,

and Rubio, the harassment and disparate treatment of Balogun immediately

escalated. On August 14, 2019 during a case review for case # 10201551,

Defendant Rubio told Balogun that a field visit would be beneficial on the case and

instructed him to go ahead and schedule a field visit for the case. (A. 181-183; Ex.

53 01:45-02:58, 05:02-08:34). Prior to leaving for the field visit on August 16,

2019, Balogun informed Defendant Rubio of the field visit and further wrote his

whereabout on the unit's calendar per protocol. (A. 155-156; Ex. 17). Nonetheless,

shortly thereafter, Defendant Rubio falsely accused Balogun of being absent

without leave and conducted the subject field visit without obtaining prior approval

from her or informing anyone of his whereabout. *Id.*

On September 4, 2019, Balogun met with William LaMot, the interim

director of investigations at the time, and complained about being concerned that

he would not receive a fair evaluation at the conclusion of his extended probation, due to the unfair treatment he was being subjected to because of protected classes on the unit. (A. 193-195; Ex. 58 26:38-27:12, 51:13-53:13, 01:02:50-01:12:10). LaMot responded by informing Balogun that he would talk to management about the concerns and get back. *Id.* However, after this meeting with LaMot the harassment and disparate treatment worsened as Defendants individually and collectively interfered in Balogun's work in effort to prevent him from meeting the case completions mandate that was asked of him to pass probation, and to devise a reason to justify their termination of his employment. (A. 95-104; Amend. Compl. ℙℙ 72-90).

On October 2, 2019, Defendant Rubio informed Balogun that a second field visit might be necessary for case # 10201173, but asked him to first send witness letters to the tenants at the subject building and a second request for additional information to the respondents, and to schedule the second field visit if he was unable to obtain the needed information from the tenants and the respondents. Balogun sent out the witness letters and the second request for information as instructed. (A. 81; Amend. Compl. ℙ 38). However, on October 7, 2019, five days after the case review meeting, Defendant Rubio falsely accused Balogun of refusing to conduct the second field visit and refused to respond to Balogun's reply email. (A. 160-161; Ex. 20).

Furthermore, on October 3, 2019, even while on leave, Defendant Rubio asked Defendants Ploski and Carrasquillo to deny Balogun permission to conduct scheduled field visits for cases # 10202098 and 10202446 (A. 81; Amend. Compl. ¶ 39), which they obliged as evidenced by their denial of such permission and informing him that Defendant Rubio had instructed them not to allow him to go on the field visits without having someone to accompany him. (A. 187-189; Ex.56 00:09-03:27) ; (A. 190-192; Ex. 57 00:03-03:14). It is important to note that HRS 1s at HIU generally work independently of one another on their respective caseload. And even after  Balogun asked other HRS 1s and Defendants Ploski and Carrasquillo to accompany him to the subject field visit, they all expressed being unavailable to accompany him to the field visits. *Id.* Yet, Defendants Ploski and Carrasquillo still denied him permission. *Id.* Thereafter, Balogun sent an email to Defendant Martinez and complained about Defendants Rubio, Carrasquillo, and Ploski's refusal to allow him to go on the scheduled field visit, complaining that their action was hindering his capacity to meet the total case production that was asked of him in order to pass through probation. (A. 158-159; Ex. 19).

On October 10, 2019 without any prior notice or conversation about his performance from his supervisors, Defendant Jafri called Balogun to his office wherein Defendant Rubio was waiting in a conference room and they informed him that he was instantly being terminated due to unsatisfactory service and

15

insubordination, and that he had until the end of that workday to remove his personal belongings.(A. 174-175; Ex. 49 04:20–04:44, 17:35-17:56).  Shortly thereafter, Defendant Martinez instructed security staff to remove Balogun from the building before the end of the workday and before he could gather his personal belongings. (A. 176-177; Ex. 50 11:31-11:52, 12:38-12:59).

 Consequently, many of Balogun's personal belongings remained in the office as he was forced out of the building by security staff.

## STANDARD OF REVIEW

The appellate court review a grant of summary judgment de novo. *1077 Madison St., LLC v. Daniels,* 954 F.3d 460, 463 (2d Cir. 2020), "construing all the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Kuebel v. Black & Decker Inc.,* 643 F.3d 352, 358 (2d Cir. 2011).

## ARGUMENTS

## I    THE DISTRICT COURT ERRED IN GRANTING DEFENDANTS' MOTION BY FAILING TO FOLLOW THE SUMMARY JUDGEMENT STANDARD

Granting of summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P.

56(c). The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only when the moving party is able the demonstrate the absence of any genuine issue of material fact will the burden shift to the nonmoving party to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). The Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omva, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).

## A. Summary judgement is inappropriate where there are genuine issues of material facts at dispute.

"An issue of fact is `genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free School District*, 812 F.Supp.2d at 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir.2009)). A fact is "material" if it might affect the outcome of the litigation under the relevant law. *Id.* The district court claimed that it's decision to grant Defendants summary judgment motion was based on facts drawn from the parties' Rule 56.1 statement and other submissions that are "either undisputed or based on evidence in the record drawing all

17

reasonable inferences in favor of the non-moving party, Plaintiff." (A. 17; Op at Pg 1). However, in his Rule 56.1 statement, Balogun clearly disputed 71 of Defendants' 105 paragraphs statements of undisputed facts. (A. 44-46; Pl's Memo at pg. 3-5).

Balogun affirmed that an issue of material facts exists as to what is deemed satisfactory completion of probationary term, as to the number of cases assigned and completed during his initial probation term, as to the number of cases similarly situated HRS 1s were assigned and completed during their probationary term, as to the number of cases he completed during the first quarter of his extended probation and the number of cases he was credited for, as to how cases are counted towards an HRS 1's total production, as to whether he went on field visits without permission or informed anyone of his whereabouts, as to whether he refused to conduct filed visits, as to whether he follow supervisory instructions, as to whether he was denied permission to conduct field visits, as to Defendants' alleged exception to CSR 4.5 the bars reassignment of a probationary employee, as to whether Balogun complained to management, as to Defendants response or lack thereof to Balogun's complaints, and as to the veracity of Defendants proffered reasons for extending his probation and terminating his employment. *Id.* Moreover, in its opinion, the district court acknowledged that the parties dispute as to whether Balogun met DHR's performance standard during his initial probation period and

as to whether his proposed comparators completed fewer that 108 cases during their initial probationary period. (A. 18-24; Op. at pgs. 2-7).

In spite of Balogun's alleged disputed facts and evidence, as well as the district court's acknowledgement of disputed facts that are relevant to his claims, the district court still thought it was appropriate to grant summary judgement. (A. 44-46; Pl's Memo at pg. 3-5). The Supreme Court has clarified that the party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only when the moving party is able to demonstrate the absence of any genuine issue of material fact will the burden shift to the nonmoving party to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). The evidence showed that there are multiple material facts at issue in this case. Defendants failed to meet their burden because they have not demonstrated absence of genuine issues of material fact. Therefore, the district court erred in granting Defendants summary judgement motion.

**B.      Summary judgement is inappropriate where the district court construe evidence and draw inferences in favor of the moving party**

In determining a summary judgement motion, the district court must "construe the facts in the light most favorable to the non-moving party and must

19

resolve all ambiguities and draw all reasonable inferences against the movant."

*Brod v. Omva, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).

The facts by which the district court based its decision to grant summary judgement were mostly taken from Defendants point of view. The district court concluded in accordance to Defendants assertions that Balogun struggled with tasks and standards, that he was given the opportunity to meet his case production numbers, that he submitted poorly researched and poorly written investigative reports, and that his work performance did not improve during his extended probation. (A. 18-25; Op. at pgs. 2-8). The district court took these facts to be true in spite of Balogun's dispute of most of the facts and the district court's acknowledgement of some of the disputed facts Plaintiff's memorandum of law in opposition to Defendants summary judgement motion. (A. 44-46; Pl's Memo at pg. 3-5). By ignoring Balogun's statements and evidence that contradicts Defendants assertions, the district court interpreted the facts and evidence, and made inferences in favor of Defendants.

Accordingly, the district court failed to follow the summary judgement standard and therefore, erred in granting Defendants motion.

## II.    THE DISTRICT COURT ERRED IN GRANTING DEFENDANTS' SUMMARY JUDGEMENT MOTION FOR BALOGUN'S TITLE VII CLAIM

The United States Supreme Court established a three-part burden-shifting framework for proving the existence of disparate treatment discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under that framework, an employee first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1527-28 (11th Cir. 1997). Once the employee has presented a prima facie case the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Rojas v. Florida,* 285 F.3d 1339, 1324 (11th Cir. 2002). If the employer satisfies that burden, then the burden shifts back to the employee to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination. *Id*.

A plaintiff can meet the burden for a prima facie case of employment discrimination or discriminatory discharge under Title VII by showing: (i) membership in a protected class, (ii) satisfactory performance of the duties required by the position, (iii) an adverse employment action, and (iv) circumstances surrounding the action giving rise to an inference of discrimination. *Collins v. N.Y.C. Transit Auth.,* 305 F.3d 113, 118 (2d Cir. 2002).  In their motion,

21

Defendants argued that summary judgement was warranted because Balogun failed to demonstrate satisfactory performance while employed at DHR and failed to allege discriminatory animus (See Def's Memo at pgs. 16-19). However, the district court only addressed the second reason stating that it granted Defendants summary judgement on the Title VII discrimination claim because the record does not support an inference of discriminatory intent at the first and third step of the McDonnell Douglas analysis. (A. 22-27; Op. at pgs. 6-11).

As an initial matter, it is important to note that Balogun made two separate discrimination claims in this matter including discriminatory extension of probation and discriminatory termination. Take further notice that the factual allegations with the discriminatory extension of probation are in many respects inapplicable to the discriminatory termination claim and they should be reviewed separately. The district court appeared to have conflated facts that were relevant to one with the other in its decision to grant summary judgement. Balogun hereby addresses each discriminatory claim separately.

A.    **The District Court Erred by Dismissing Balogun's Title VII Discriminatory Extension of Probation Claim**

In his discriminatory extension of probation claim, Balogun alleged that his initial 52-week probationary term which commenced on April 26, 2018 and ended on April 25, 2019 was discriminatorily extended (A. 22-23; Pl's Memo at pgs. 6-7). In their summary judgement motion, Defendants argued that summary

22

judgement was warranted because Balogun failed to demonstrate satisfactory performance during his initial probationary period, and failed to allege any discriminatory animus (See Defs' Memo at pgs. 16-19). However, the record and evidence showed that Balogun demonstrated satisfactory performance and discriminatory animus.

   i.   Balogun demonstrated satisfactory performance during his
        Initial Probation period

To establish satisfactory performance, "plaintiff need only show his performance was of sufficient quality to merit continued employment…" *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1283 (7th Cir. 1977). In determining whether an employee's job performance is satisfactory the ultimate inquiry is whether an employee's performance "meets his employer's legitimate expectations." *Huhn v. Koehring Co.*, 718 F.2d 239, 244 (7th Cir. 1983). The Court must also allow employees "to show that the employer's demands were illegitimate or arbitrary," *Meiri v. Dacon*, 759 F. 2d 989 (2nd Cir. 1985) (citing *Kephart v. Institute of Gas Technology*, 630 F. 2d 1217, 1223 (7th Cir. 1980).

The record and evidence showed that Balogun satisfactorily completed his required 52-week probation and that Defendants' proffered reasons for extending his probation were based on illegitimate expectations. Balogun provided his 52-week probation report which indicated that he received satisfactory ratings in all 14 categories of performance evaluation (A. 142-144; Ex. 9). Balogun provided his

recorded conversation with his supervisors, Defendants Ploski and Carrasquillo during his 52-week probation review on April 15, 2019, wherein they expressed being satisfied with his performance. (A. 162-167; Ex. 47 10:02-11-55, 13:15-13-57). Balogun argued that the extension of his probation was contrary to the CSR 4.5 which states that an employee's probation may be extend if his performance was unsatisfactory (Civ. Serv. § 4.5(b)(5)(ii)) as he did not receive any unsatisfactory rating in his initial 52-week probation evaluation.

Furthermore, Balogun argued that Defendants proffered reason for extending his probation was arbitrary and illogical. (A. 51; Pl's Memo at pgs. 7). Defendants stated that they extended Balogun's probationary period for failing to close a minimum of 108 cases during the period. (A. 162-167; (Ex. 47 10:02-11-55). However, the evidence corroborated Balogun's claim that Defendants reason for extending his probation was arbitrary and illogical. Balogun's April 16, 2019 grievance letter wherein he challenged Defendants reason for extending his probation while explaining that up till that day, he had been assigned a total of 106 cases, 12 of which were reassigned to other HRS 1s after he had completed significant part of their investigations, 13 of which were recently assigned and cannot be expected to be closed by the evaluation, and that the he completed the remaining cases (A. 131-132; Ex. 2); Defendant Carrasquillo's statement on August 1, 2019 wherein she affirmed that Balogun was assigned less than 108

24

cases during his initial probation period (A. 168-173; Ex. 48 28:26-31:05); and

Balogun's case record confirming his total case assignments, reassignments, and

completions during his initial probation period (A. 196-198; Ex. 67). These

evidences affirmed that Balogun was assigned less than 108 cases, that he

completed all the cases that could have been completed before his 52-week

probation review, and that it was mathematically impossible for him to have

completed 108 cases.

    ii.  <u>Balogun established an inference of discrimination for
defendants' extension of his probationary period</u>

A plaintiff may raise an inference of discrimination for the purposes of

making out *a* prima facie case by relying on the theory of disparate treatment; that

is, by showing that his employer treated him less favorably than a similarly

situated employee outside his protected group. *Risco v. McHugh*, 868 F. Supp. 2d

75 (S.D.N.Y. 2012) (citing *Mandell v. Cnty. of Suffolk,* 316 F.3d 368, 379 (2d Cir.

2003). Plaintiff must demonstrate that he is "similarly situated in all material

respects" to the employees he is comparing himself to. *Graham v. Long Island

R.R., 230 F.3d 34, 39 (2d Cir. 2000).* Balogun identified Defendant Ploski,

Defendant Rubio, Defendant Ortiz-Feliciano, Doris Gonzalez, Elena Perlongo, and

Aimee May as similarly situated individuals who were not subjected to the same

terms as him and were treated better. (A. 52; Pl's Memo at pg. 11). Defendants did

not dispute that these persons were similarly situated HRS 1 with Balogun during

his employment but rather claimed that these individuals completed over 108 cases during their respective 52-week probationary period. (See Defs' Memo at pg. 6). Nonetheless, the district court's reasons for granting summary judgement were that Balogun did not show that he was similarly situated with his proposed comparators and did not show that the comparators engaged in comparable conduct. (A. 23-26; Op. at pgs. 7-10).

The District Court erred in concluding that no reasonable jury could find that he was similarly situated with his comparators. *Id.* Balogun provided the 52-week probation reports and case records of all the identified comparators which clearly showed that they held the same position, that none of them completed 108 cases and that they were assigned much more cases than Balogun during their respective 52-week probation period. Aimee May ("May") was assigned 107 cases and credited for completing 103 cases between April 25, 2018 and April 25, 2019 (A. 211-215; Ex. 72); Elena Perlongo ("Perlongo") was assigned 86 cases between October 1, 2018  and September 30, 2019 and could not have possibly c7ompleted 108 cases (A. 207-210; Ex. 71); Doris Gonzalez ("Gonzalez") was credited for completing 82 cases between January 14, 2016 and January 12, 2017 (A. 202-206; Ex. 70); and Defendant Rubio was assigned 105 cases and credited for completing 103 (A. 199-201; Ex. 68). None of these individuals were subjected to extended probation for failing to complete 108 cases. Furthermore, the record of Balogun's

caseload during his initial probationary period (A. 196-198; Ex. 67), and his April

16, 2019 grievance letter to management showed that he was assigned a total of

106 cases during his initial probation period, 12 of which were reassigned to other

investigators after he had completed their investigations, and 13 of which were just

assigned to him at the time and was not expected to be completed by the time of

his evaluation. (A. 131-132; Ex. 2). Balogun completed the remaining 82 cases,

and it was mathematically impossible for him to have completed 108 cases during

the period. *Id.*

The District Court also erred in concluding that Balogun failed to

demonstrate that the comparators engaged in comparable conduct including

receiving similar performance-related feedback or disciplinary history as him. (A.

23-25; Op. at pgs. 7-9). In rationalizing its conclusion, the district court claimed

that the salient facts in the case was that he was on probation; that his reviews

reflected persistent deficiencies in his productivity, writing, and data entry skills;

that he had been insubordinate; and that he completed fewer than 108 cases during

his initial probation period. *Id.* Balogun did not dispute that he completed fewer

than 108 cases but rather argued that his comparators also completed fewer than

108 cases but were not subjected to extended probation as a result. Although,

Balogun had been advised by supervisors on how to improve his writing, but such

advise cannot be equated to persistent deficiency as there is absolutely no

indication in his' 52-week probation report suggesting that his writing skills were inadequate, and he received satisfactory rating in the writing category of his performance evaluation, and there was absolutely no mention of Balogun's data entry skills in the report. (A. 142-144; Ex. 9). Moreover, the Tasks and Standards for an HRS 1 only requires completion of 108 cases over the course of a year when the current office demands requires it. (A. 226; Ex. 79). The office demands at the time of Balogun's initial probation could not have required him to complete more cases than assigned.

Furthermore, the district court abused its discretion by taking Defendants allegations as true in granting summary judgement because the facts supporting its conclusion are either disputed and or irrelevant to Balogun's allegation of discriminatory extension of probation claim. *See Supra* at 17-19. Summary judgment is proper only where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The facts surrounding Defendants allegations of insubordination, data entry issues, and deficient work product are not only disputed but also irrelevant to Balogun's discriminatory extension of probation claim because they allegedly occurred long after his probation was extended on April 15, 2019. (See Def's Memo pgs. 5-8). Moreover, Defendants failed to provide any disciplinary record to corroborate their insubordination claim.

28

Evidence of invidious comments from the Defendants about Balogun's protected classes are not required to show discriminatory animus.

The district court abused its discretion by taking Defendants allegations as true in spite of Balogun's dispute of the determining facts, and by basing its conclusion to grant summary judgement on these disputed, and in other respects irrelevant facts.

### iii. Defendants failed to articulate a legitimate non-discriminatory reason for extending Balogun's initial probation

In its judgement, the district court claimed without elaboration that Balogun did not dispute that Defendants satisfied the second step of the burden shifting analysis (A. 26; Op. at pg. 10), whereas Balogun specifically argued in his opposition that Defendants failed to articulate a non-discriminatory reason for extending his probation and terminating his employment (A. 56; Pl's Memo at pg. 15). The Court has held that a prima facie case creates a rebuttable presumption of discrimination and shifts the burden to the Defendants to rebut the presumption of discrimination by producing evidence that the Plaintiff was terminated for a legitimate, nondiscriminatory reason. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981). To accomplish this, the Defendants must clearly set forth, through the introduction of admissible evidence, the reasons for the Plaintiff's termination and the explanation provided must be legally sufficient to justify a judgment for the Defendant. *Id.* "The factfinder's disbelief of the

29

reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. *Id.* Thus, if an employer cannot produce any evidence of a nondiscriminatory reason and the trier of fact concludes that the Plaintiff has proven his prima facie case, the court must enter judgment for the Plaintiff. *Id.*

The record contradicted Defendants claims that Balogun performance was unsatisfactory, that he completed less than 108 cases while being assigned more than 108 cases during his initial probation, and that other similarly situated HRS 1s completed 108 cases or more during their initial probation period, and Balogun presented substantial evidence that raises an inference of deception, falsehood, fabrication, and dishonesty. *See Supra* at 22-29. Moreover, Defendants could not point to any record or evidence that corroborate their claims. Defendants' failure to present evidence in support of their reasons for extending Balogun's probation together with the elements of the prima facie case, suffice to show intentional discrimination and thus, entitles Balogun to a judgement as a matter of law. *Hicks v. St Mary Honor Center,* 970 F. 2d, at 493 (1996). Defendants failed to meet their burden and the district court erred in granting summary judgement for this claim.

iv. Defendants proffered reasons for extending Balogun's initial probation are pretextual

Even if Defendants satisfied the second step of the burden shifting analysis, the burden shifts back to the Plaintiff to offer evidence that Defendants' proffered reasons are pretext for illegal discrimination. *Rojas v. Florida,* 285 F.3d 1339, 1324 (11th Cir. 2002). Plaintiff can meet this burden by direct evidence that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. *St. Mary's Honor Center et al. v. Hicks,* 509 U.S. 502 (1993). Once the Plaintiff proved the employer's proffered reasons for the adverse employment actions to be pretextual, the plaintiff will be entitled to judgment as a matter of law. *Id*.

The foregoing evidence clearly showed that Defendants proffered reasons for extending his probation were arbitrary and grounded in deception, falsehood, fabrication, and dishonesty. *See Supra* at 22-29. Defendants proffered explanations without any supporting evidence are unworthy of credence and devoid of rational basis. Balogun has presented evidence of pretext that a discriminatory reason more likely motivated their employment actions against him.

Accordingly, the district court erred in granting summary judgement to Defendants on this claim.

**B.    The District Court Erred in dismissing Balogun's Title VII Discriminatory Termination Claim**

i.    Balogun demonstrated satisfactory performance during his extended probation

Balogun provided ample evidence showing that he demonstrated satisfactory performance during his extended probation and that Defendants proffered reasons for terminating his employment was based on false and fabricated reasons. Balogun provided the recording of his April 15, 2019 conversation with Defendants Ploski and Carrasquillo during his 52-week probation review whereby they affirmed that they extended his probation to give him a chance to show that he is capable of completing an average of nine cases per month since he was not assigned enough cases to meet the 108 case quota during his 52-week probation period and that they will make his appointment permanent upon satisfactory completion of 27 cases after the first quarter of his extended probation (A. 162-167; Ex. 47 10:02-11-55, 13:15-13-57). Balogun's first quarter extended probation report showed that he received satisfactory rating in all 14 categories of performance evaluation (A. 145-147; Ex 10). Balogun also provided the August 1, 2019 recording of his first quarter extended probation review whereby his supervisor, Defendant Rubio confirmed that he submitted 27 cases during the period. (A. 168-173; Ex. 48 17:13-18-18).

32

ii.  Balogun established inference of discrimination for defendants'
termination of his employment.

"An inference of discrimination can arise from circumstances including, but
not limited to, 'the employer's criticism of the plaintiff's performance in ethnically
degrading terms; or its invidious comments about others in the employee's
protected group; or the more favorable treatment of employees not in the protected
group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn,*
795 F.3d at 312 (quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir.
2009)).

The August 1, 2019 recording also showed Defendants Rubio and Martinez
confirming that they excluded two of the 27 cases he completed during his first
quarter of extended probation from his report because they were yet to be closed
and misrepresented the term "complete" in the Tasks and Standards for HRS 1(A.
228; Ex. 79) to mean that cases must be closed in the Agency's Case Management
System ("CMS") and not just submitted to supervisor before they would count
toward his total case production to justify their denial of permanent appointment to
Balogun and continuance of his extended probation (A. 168-173; Ex. 48 18:20-
23:02). Balogun also provided record of the entire units' total case completion for
the July 2018 which corroborated Balogun's claim that Defendants misrepresented
the term "complete" in the Tasks and Standards for HRS 1 because not all the
cases that were counted for each investigator's total production had been closed.

33

(A. 216-225; Ex. 77). Moreover, Defendants initially denied that Balogun completed 27 cases and that Defendants Rubio and Martinez improperly excluded two of the 27 cases (Defs' resp. to Pl's Admin. Req. ℙ 42). However, upon completion of discovery and development of evidence that contradicts their denial, Defendants then admitted that cases are counted based on the number of submissions rather than closures (Defs.' Resp. to Pl's Admis. Req. ¶¶ 24, 25), after having used this rationale to deny Balogun a permanent employment status.

Furthermore, during the second quarter of Balogun's extended probation, he had exactly 27 cases on his caseload, 18 of which had either been completed or awaiting supervisory review. ( See Decl. of Balogun ¶ 26). Case #10202776 and 10203130 had been conciliated and awaiting signature of all parties, case # 10202784 had been withdrawn and awaiting signature of the Complainant, case # 10201380 had been submitted to supervisor for review, and investigations on the remaining nine cases # 10202545, 10203310, 10203178, 10202766, 10202909, 10202098, 10201446, 10203107, 10202221, had been completed, and Balogun was finalizing their respective final investigation reports before he was abruptly terminated. *Id.* If Defendant Rubio had inquired about Balogun's progress in accordance with Civil Service Rule 4.5(b)(5)(iii), she would have observed that he was on pace to complete every case that was assigned to him during his time at HIU.

Additionally, Defendants Rubio and Martinez failed to provide any supporting documentation for any of the nine unsatisfactory performance ratings in Balogun's final extended probation report in accordance to the agency's evaluation policy (A. 149; Ex. 11 at pg. 2). The record showed that prior to this final report, Balogun received satisfactory rating in all the 14 areas of performance evaluation for all the preceding five evaluations, the fifth of which was also conducted by Defendants Rubio. (A. 133-147; Exs. 6-10). Defendants Rubio and Martinez failed to provide any meaningful rationale or evidence to justify the drastic swing in their evaluation of Balogun's performance from August 1, 2019 to October 10, 2019, but pointed to incidents that they alleged occurred on May15, 2019 and on June 11, 2019. (A. 148-152; Ex. 11). If these allegations were true as alleged, then they would have been addressed in the probation evaluation that followed. There was no indication of such incidents in the probation review that followed because they are false. (A. 145-147; Ex. 10).

In addition, Balogun provided evidence of being commended for his work ethics as well as the quality of his work including his progress in investigation and report writing by his interns (See Decl. of Gbamele), supervisors (A. 184-186; Ex. 55 00:25-00:59;) and (A. 162-167; Ex. 47 11:45-11-55, 13:15-13-57), agency attorneys (A. 153-154; Ex. 16), and other HRS 1s. In fact, around February 2019 during a mandatory writing training, Balogun's co-worker, Gonzalez informed him

35

that she was told by our supervisor at the time, Defendant Ploski that the one HRS 1 who did not need the writing training was him. (See Decl. of Balogun ¶ 23).

Furthermore, the evidence refuted Defendant Rubio's allegations that Balogun acted insubordinately by going on a field visit on August 16, 2019 and that he went without her permission and without informing anyone of his whereabouts. Balogun provided a recording of his August 14, 2019 conversation with Defendant Rubio which showed that the subject case had been reviewed and the visit approved by Defendant Rubio prior to Balogun going on the field visit (A. 182-184; Ex. 53 01:45-02:58, 05:02-08:34). Balogun also sent an email to Defendant Rubio prior to him heading out for the visit, and indicated his whereabouts on the unit's general calendar. (A. 155; Ex. 17). So, Balogun could not have been AWOL as Defendants alleged because they were made aware of his whereabouts.

The evidence further refutes Defendant Rubio's allegation in Balogun's final report that he refused to conduct a second field visit after she told him on October 2, 2019, that one may be necessary in case # 10201173.(A. 148-152; Ex. 11). Email correspondence between Defendant Rubio and Balogun of October 7, 2018 and October 8, 2019, showed that Balogun followed her directives as instructed by sending a request for additional information to the respondents and witness letters to the tenants as she instructed. (A. 160-161; Ex. 20). Defendants also admitted

36

that Balogun followed Defendant Rubio's directions as instructed. (Defs' Resp. to Pl's Admis. Req. ¶¶ 51, 52). Moreover, it calls to question why Defendant Rubio's waited five days, from October 2, 2019 to  October 7, 2019 before making her accusation and why she failed to respond to Balogun's October 8, 2019 responsive email. Defendant Rubio's allegations were false.

Defendant Rubio also accused Balogun of sending an email to his supervisor on October 3, 2019, insisting that he should be able to conduct a field visit alone. However, the evidence showed that Balogun sent an email to Defendant Ploski informing him about the field visit as Defendant Rubio was out on leave (A. 157; Ex. 18), and an email to Defendant Martinez after Defendants Rubio, Carrasquillo, and Ploski collectively denied him permission to conduct the field visit (A. 158-159; Ex. 19). Defendants conspired and collaborated to interfere with Balogun's work and hinder him from completing the required number of cases that they asked of him to pass probation. At no time prior to Balogun's termination was he counseled for his conduct or performance, placed on a performance improvement plan, or subjected to any disciplinary action. Moreover, Balogun was neither advised about his status and progress during the final quarter of his employment nor provided a probation review in accordance to civil service law (Civ. Serv. § 4.5(b)(5)(iii)).

Balogun presented sufficient evidence showing satisfactory performance and that raised an inference of deception, falsehood, fabrication, dishonesty, and discriminatory animus.

> iii. <u>Defendants failed to articulate a legitimate non-discriminatory reason for terminating Balogun's employment</u>

In its judgement, the district court claimed without elaboration that Balogun did not dispute that Defendants satisfied the second step of the burden shifting analysis (A. 26; Op. at pg. 10), whereas Balogun specifically argued in his opposition that Defendants failed to articulate a non-discriminatory reason for terminating his employment (A. 56; Pl's Memo at pg. 15).

The record clearly showed that Defendants made numerous assertions but failed to present any evidence that is legally sufficient to support their reasons for terminating his employment on October 10, 2019. As discussed above, Balogun presented substantial evidence that raises an inference of deception, falsehood, fabrication, and dishonesty. *See Supra at* 32-37. Defendants' failure to present evidence in support of their reasons for terminating his employment together with the elements of the prima facie case, suffice to show intentional discrimination and thus, entitles Balogun to a judgement as a matter of law. *Hicks v. St Mary Honor Center,* 970 F. 2d, at 493 (1996). Defendants failed to meet their burden.

iv    Defendants proffered reasons for terminating Balogun's
employment are pretextual

Even if Defendants satisfied the second step of the burden shifting analysis,

the burden shifts back to the Plaintiff to offer evidence that Defendants' proffered

reasons are pretext for illegal discrimination. *Rojas v. Florida,* 285 F.3d 1339,

1324 (11th Cir. 2002). Plaintiff can meet this burden by direct evidence that a

discriminatory reason more likely motivated the employer or indirectly by showing

that the employer's proffered explanation is unworthy of credence. *St. Mary's*

*Honor Center et al. v. Hicks,* 509 U.S. 502 (1993). Once the Plaintiff proved the

employer's proffered reasons for the adverse employment actions to be pretextual,

the plaintiff will be entitled to judgment as a matter of law. *Id*.

The forgoing evidence clearly showed that Defendants proffered reasons for

terminating his employment were arbitrary and grounded in deception, falsehood,

fabrication, and dishonesty. *See Supra* at 32-37. Defendants proffered explanations

without any supporting evidence are unworthy of credence and devoid of rational

basis. Balogun has presented substantial evidence of pretext and that a

discriminatory reason more likely motivated their employment actions against him.

Accordingly, the district court erred in granting summary judgement to

Defendants on this claim.

### III. THE DISTRICT COURT ERRED IN GRANTING DEFENDANTS' SUMMARY JUDGEMENENT MOTION FOR BALOGUN'S TITILE VII HOSTILE WORK ENVIRONMENT CLAIM

The district court abused its discretion by concluding that Balogun has not proffered evidence from which a reasonable jury could find in his favor. (A. 27; Op. at pg. 11). A plaintiff can establish a hostile work environment by showing that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 101-02 (2d Cir. 2020) (quoting Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)). Generally, incidents of harassment "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* at 102 (quoting Alfano, 294 F.3d at 374). "A single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." *Id.* The district court granted summary judgement claiming that the alleged facts underlying Balogun's hostile work environment claim do not rise to the level of "permeated with intimidation, ridicule, and insult." *See Littlejohn*, 795 F.3d at 320-

21 , and that the evidence does not support that the harassing conduct was done with discriminatory animus.

Here, Defendants' harassing conduct was not simply about negative job evaluations but also about intentionally falsifying and fabricating information, threats and intimidation, misrepresentation of facts and law, and unreasonable interference with Balogun's work. (A. 94-106; Amend. Compl. ¶¶ 71-97). It should be noted that Defendants denied about all of Balogun's hostile work environment allegations. (Def. Rubio's Answer ¶¶ 73-78; Def. Martinez's Answer ¶¶ 79-81; Def. Jafri's Answer ¶ 82; Def. Carrasquillo's Answer ¶¶ 83-85; Def. Ploski's Answer ¶¶ 86-88; Def. Ortiz-Feliciano's Answer ¶¶ 89-90).

Nonetheless, in addition to affirming Balogun's allegations, the evidence showed that Defendants' responses were grounded in falsehood and fabrications. The evidence showed that Defendants Rubio improperly instructed Defendants Carrasquillo and Ploski to deny Balogun a permission to conduct schedule field visit and interview. (A. 187-192; Ex. 56 00:09-03:27; Ex. 57 00:03-03:14). The evidence showed that Defendant Rubio improperly subjected him to heightened and unreasonable scrutiny which started during the second quarter of his extended probation after he had held the position for about 15 months as nothing in Balogun's previous probation reports suggested the need for heightened scrutiny (A. 133-147; Exs. 6-10). The evidence showed that Defendant Rubio purposely

41

refused to correct the inaccurate number of cases he completed during the first quarter of his extended probation report (A. 168-173; Ex. 48 17:11-23:02). The evidence showed that Defendants fabricated false information in his second quarter extended probation report *See Supra* at 32-37. The evidence also showed that Defendant Rubio failed to advise him about his status and progress during the final quarter in accordance to civil service law. (Defs' Resp. to Pl's Admis. Req. ¶ ;Civ. Serv. § 4.5(b)(5)(iii)), and that Defendants failed to provide supporting evidence for the unsatisfactory ratings in his final probation report in accordance to the agency's evaluation requirement. (A. 149; Ex. 11 pg. 2).

The evidence showed that Defendants Martinez knowingly misrepresented the term "complete" in the Tasks and Standards for the HRS 1 position to justify removing two cases from Balogun's total case production for the first quarter of his extended probation and threatened him after he complained about being singled out and subjected to unfair treatment at the HIU (A. 168-173; Ex. 48 17:11-23:02). Defendant Martinez also subjected Balogun to intimidation and humiliation by forcibly removing him from the building after his termination (A. 176-177; Ex. 50 11:31-11:52, 12:38-12:59).

The evidence showed that Defendant Jafri improperly denied Balogun's request for a different assignment during his extended probation by knowingly misrepresenting being informed by the Governor's office of employment relations

42

that an exception to CSR 4.5 allows them to deny his request for reassignment. (A. 178-180; Ex. 51 00:08-02:50). No such exception exists (See Civ. Serv. § 4.5(b)(5)(ii)); and the CSL requires that an employee be given an new assignment at a different region of the agency for extended probation. (Civ. Serv. § 1.2(b)(2)).

The evidence showed that Defendant Carrasquillo arbitrarily extended Balogun's probation based on an impossible standard and in violation of civil service law *See Supra at* 22-29. The evidence showed that Defendant Carrasquillo breached her promise to make Balogun's appointment permanent after he completed 27 cases as agreed (A. 145-147; Ex. 10). The evidence showed that Defendant Carrasquillo admitted to denying Balogun permission to conduct scheduled field visit. (A. 190-192; Ex. 57 00:03-03:00), and admitted that they did not assign him any interns during his extend probation period. (Def. Carrasquillo's Answer ¶ 53).

The evidence showed that Defendant Ploski subjected Balogun to unwarranted put downs and scolding, intentionally assigned him more difficult cases, reassigned cases that he had completed their investigations to other HRS 1s, subjected him to threats and intimidation when he complained about being subjected to unfair treatment at HIU, and arbitrarily extended his probation based on an impossible standard in violation of civil service law. *See Supra* at 22-29.

The evidence showed that Defendant Ortiz-Feliciano maliciously instructed Defendant Ploski to needlessly scold Balogun for failing to complete three LOJ on August 31, 2018. *See Supra* at 7-8. Defendant Ortiz-Feliciano's admission also proved that she purposefully misrepresented Balogun before the Deputy Commissioner to undermine his character (Def. Ortiz-Feliciano's Answer ¶¶ 20, 21, 89).

Balogun has presented substantial evidence of a prima facie case for hostile work environment. Whether the harassing conduct is severe or pervasive enough to rise to the level of "permeated with intimidation, ridicule, and insult is a question for the jury. The Court in *Harris* indicated that there is no precise test for determining whether conduct is severe or pervasive enough to constitute a hostile work environment but indicated that certain guideposts including "frequency of the discriminatory conduct; it's severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993).

Making false statement and falsifying probation reports are conduct that can be considered severe by themselves. Moreover, the persistent and continuous nature of these conduct are pervasive enough to constitute hostile work environment. Furthermore, "an inference of discrimination can arise from …more

favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn,* 795 F.3d at 312 (quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009)). Balogun's experience of disparate treatment and harassing conduct commenced about July 2018 and progressively escalated on a continuous basis till he was terminated on October 10, 2019.

Accordingly, the district court erred in granting Defendants summary judgement on this claim.

## IV. THE DISTRICT COURT ERRED IN GRANTING DFENDANTS SUMMARY JUDGEMENT FOR BALOGUN'S RETALIATION CLAIM

The district court erred in concluding that the record does not support a prima facie case for retaliation. (A. 29; Op. at pg. 13). Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an employee for opposing discriminatory practice. 42 U.S.C. § 2000e-3. To establish a prima facie case for retaliatory discrimination a plaintiff must present evidence that shows "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *Hicks v. Baines,* 593 f. 3D 159, 164 (2d Cir.2010).

## A. Balogun Established His Engagement in Protected Activity

The district court claimed that the record did not show that Balogun engaged in protected activity claiming that his complaint of unfair treatment was not sufficiently specific to inform the employer that he was complaining about prohibited conduct. (A. 30; Op. at pg. 14). However, the evidence proved that Balogun complained to management staff about being subjected to unfair treatment because of his protected classes on multiple occasions, and provided recording of some of the conversations. The Supreme Court has held that when an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity. *Crawford v. Metropolitan Government of Nashville & Davidson County*, 555 U.S. 271 (2009). Balogun provided a recorded conversation with his supervisor, Defendant Ploski wherein he complained about being singled out and subjected to unfair treatment on the unit (A. 184-186; Ex. 55 12:50-21:13). Balogun provided recorded conversation with Defendant Jafri wherein he complained about being singled out and subjected to unfair treatment on the unit (A. 178-180; Ex. 51 01:01-02:13). Balogun provided recorded conversation with Defendant Martinez wherein he complained about being singled out and subjected to unfair treatment on the unit (A. 168-173; Ex. 48 34:55-44:05). Balogun provided recorded conversation with William LaMot wherein he

46

complained about being subjected to unfair treatment on the unit. (A. 194-196; Ex. 58 26:38-27:12, 51:13-53:13, 01:02:50-01:12:10). Balogun further asserted that on numerous occasions during his employment, he complained to McManus, the union representative that he was being singled out and subjected to unfair treatment on the unit. *See Supra* at 10-11. And by declining to sign allegedly erroneous and false probation reports (A. 142-144, A. 148-152; Exs. 9,11), and writing a grievance letter challenging Defendants' basis for extending his probation (A. 131-132; Ex. 2), Balogun engaged in protected activity.

These consequential facts that are at dispute and according to the summary judgement standard, the district court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omva, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). The district court ignored these evidences and took Defendants' disputed facts as true.

The district court also claimed that Defendants satisfied the second step of the burden shifting analysis, claiming Balogun did not dispute that Defendants provided a legitimate non-discriminatory reason for its adverse employment actions. (A. 26; Op. at pg. 10). Contrarily, Balogun specifically argued in his opposition that Defendants failed to articulate a non-discriminatory reason for

extending his probation and terminating his employment (A. 56; Pl's Memo at pg. 15). The record clearly showed that Defendants made numerous assertions but failed to present any corroborative evidence that is legally sufficient to support their reasons for extending Balogun's initial probation and for subsequently terminating his employment. *See Supra at* 32-37.

The district court further claimed that Balogun faltered at the third stage of the burden shifting analysis. As discussed above, Balogun presented substantial evidence that raises an inference of deception, falsehood, fabrication, and dishonesty. *See Supra* at 32-37. Defendants' failure to present evidence in support of their reasons for extending Balogun's probation and for terminating his employment, together with the elements of the prima facie case suffice to show intentional discrimination *Hicks v. St Mary Honor Center,* 970 F. 2d, at 493 (1996). Balogun demonstrated engagement in protected activity.

### B. Balogun Established Causal Connection Between His Protected Activities and Defendants Discriminatory Conduct

Balogun also established causal connection between his protected activities and Defendants' unlawful conduct. Causal connection can be established either indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or directly, through evidence of retaliatory animus directed against the Plaintiff by the Defendant. *Gordon v. N.Y.C. Bd. of Educ.,* 232 f.3d 111, 117 (2d Cir.2000).

Here, the evidence showed that Balogun's complaints were followed by unfair treatments which started around July 2018 and progressively escalated till he was subsequently terminated. *See Supra* at 40-44. It should also be noted that Defendants denied that Balogun made such complaints. ( See Def. Jafri's Answer ¶ 105; Def. Ploski's Answer ¶ 102; Def. Martinez's Answer ¶¶ 100, 101, 107). Defendants failed to articulate any reason for not acknowledging Balogun's complaints and not taking any remedial measures to address his complaints in their pleadings, admissions, or declarations. Defendants' explanations are pretext for discrimination.

Accordingly, Balogun met his burden and the district court erred in granting summary judgement for his retaliation claim.

## V. THE DISTRICT COURT ERRED IN DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER BALOGUN'S STATE LAW CLAIMS

### A. The district court has jurisdiction over Balogun's state law claims

The District Court's exercise of supplemental jurisdiction over state-law claims is mandatory if the claim must be "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." § 1367(a). The Court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3), but only after considering whether such a

decision upsets the interests of "judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 351 (1988). However, it is an abuse of discretion if the district court decline to exercise supplemental jurisdiction over the state law claims where the district court did not properly dismiss the federal claims over which it had original jurisdiction. *Vaughn v. Phx. House New York, Inc.*, 957 F.3d 141, 146 (2d Cir. 2020). The district court has supplemental subject matter jurisdiction over Balogun's state law claims as they are based on the same facts and circumstances as his Title VII claims and improperly dismissed his federal law claims without considering whether its decision upsets the interest of fairness. Defendants failed to meet their burden under Fed. R. Civ. P. 56(a) and by declining to exercise supplementary jurisdiction, the district court abused its discretion. Furthermore, the Eleventh Amendment provides no immunity for state officials sued in their personal capacities. *Dube v. State Univ. of New York*, 900 F.2d 587, 595 (2d Cir.1990).

## B. Balogun established a prima facie case for his breach of contract claim

Under the New York law, the court has held that a party asserting a breach will prevail, if the evidence shows, (1) the existence of a contract; (2) performance under the contract; (3) the defending party's breach; and (4) resulting damages. *JP Morgan Chase v. J.H. Elec. of New York, Inc.*, 239, 893 N.Y.S.2d 237 (2d Dep't 2010). A breach means one of the parties failed to perform their obligations under

the contract. *Id*. Defendants argued that Balogun cannot identify any term

contained in his appointment letter that was breached by Defendants. (See Defs'

Memo at pg. 23).

However, Balogun's acceptance of the  April 9, 2018 appointment letter

constitutes a valid contract which required Defendants to abide by the CSL in their

guidance, supervision, and evaluation of his performance and behavior during his

employment. (A, 130; Ex. 1). Defendants breached the terms of the contract when

they arbitrarily extended Balogun's probation without any unsatisfactory

performance or behaviors in violation of (Civ. Serv. § 4.5(b)(5)(ii)) as he did not

receive any unsatisfactory rating in his initial 52-week probation evaluation. (A.

142-144; Ex. 9). Defendants breached when they denied him a different

assignment upon extending his probation and fabricated a non-existing exemption

to Rule 4.5 to justify the denial. See Supra at 42. Defendants breached when they

failed to advise him about his status and progress before terminating his

employment in violation of CSL.  *See Supra* at 41. Defendants also breached by

failing to provide supporting documentations for their unsatisfactory ratings in

Balogun's final extended probation report in accordance to DHR's evaluation

protocol. *See Supra* at 41-42.

Furthermore, Defendants Carrasquillo and Ploski also breached their verbal

agreement to make Balogun's appointment permanent conditioned on the ground

that he completes the first quarter of extended probation and 27 cases during the period. Balogun satisfied the conditions of the verbal agreement but instead of making his employment permanent as agreed, Defendants continued his extended probation. (A. 162-173; Ex. 47 02:34-03:33, 10:02-10:28, 12:39-14:13); (A. 168-173; Ex. 48 17;11-18-20, 28:26-28-45).

Balogun has presented substantial evidence of the terms breached by Defendants in his appointment contract as well as the verbal agreement breached by his supervisors. Accordingly, Balogun established a prima facie case for breach of contract claim.

### C. Balogun established a prima facie case for his promissory estoppel claim

A Plaintiff can state a claim for promissory estoppel by showing that he reasonably relied, to his detriment on a promise by the Defendant. *Rogers v. Town of Islip,* 230 AD2d 727 (1996). Balogun relied on Defendants Carrasquillo and Ploski's promise to his detriment as he took all steps to complete the conditional 27 cases including working overtime without pay, working on his cases at home, and cutting short his bereavement leave following the passing of his mother and brother during the period. (See Decl. of Oladejo ¶¶ 8-13). In their motion for summary judgement, Defendants claimed that Balogun's promissory estoppel claim fails because "it is not reasonable for a party to rely on oral statements that contradict written agreement." (See Defs' Memo at pg. 24). However, the verbal

promise did not contradict the applicable CSR 4.5 for which states that, an employer can make an employee's appointment permanent after 12 weeks of extended probation. (Civ. Serv. § 4.5(b)(5)(ii)). It should be noted that in addition to failing to fulfil the promise, Defendants also denied making such promise. (Def. Carrasquillo' Answer ¶¶ 126, 127).

Balogun has presented substantial evidence of a reasonable reliance on Defendants' promise. Accordingly, Balogun established a prima facie case for his promissory estoppel claim.

## D. Balogun established a prima facie case for his interference with contractual relationship claim

A plaintiff can satisfy the third-party requirement for interference with contractual relationship by showing that the Defendants-employees exceeded the bounds of their authority. *Finley v. Giacobbe,* 79 F.3d 1285, 1295 (2d Cir. 1996). "A supervisor is considered to have acted outside the scope of his employment if there is evidence that the supervisor's manner of interference involved independent tortious acts such as fraud or misrepresentations, or that he acted purely from malice or self-interest." *Cohen v. Davis,* 926 F.Supp. 404 (S.D.N.Y. 1996).

The evidence showed that Defendants misrepresented and fabricated information and engaged in a barrage of harassment to deny Balogun a permanent employment status. *See Supra at* 40-44. Malice is evident in Defendants' blatant denial of Balogun's allegations and their failure to address his repeated complaints.

53

*Id.* Defendants' interference with Balogun's employment relationship with the State of New York, caused him to suffer harassment, humiliation, prolonged probation, loss of employment, mental anguish, and other health related issues.

Accordingly, Balogun has presented sufficient evidence of a prima facie case for his interference with contractual relationship claim.

### E. Balogun established a prima facie case for his negligent supervision claim

A plaintiff can state a claim for negligent supervision or retention under New York Law by showing in addition to the standard elements of negligence, (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises. *Zeak v. United States*, 11 Civ. 4253 (KPF) (S.D.N.Y. 2015). An employer is vicariously liable for the tort committed by an employee while acting within the scope of their employment. *Ross v. Mitsui Fudosan, Inc.,* 2F. Supp. 2d 522 (S.D.N.Y. 1998). Defendants claimed that "Balogun can point to no evidence showing that DHR knew of prior discrimination by Balogun's supervisors and failed to take action." (See Defs' Memo at pg. 25).

However, the evidence showed that Balogun repeatedly complained to management level staff and the union representative about being subjected to

unfair treatment at HIU, failed to take any remedial action in response to his complaints and even denied that he made those complaints. *See Supra* at 45-49.

Balogun has provided substantial evidence of a prima facie case for negligent supervision and Defendants are not entitled to summary judgement on this claim.

### F. Balogun established a prima facie case for his intentional infliction of emotional distress claim

Under New York Law, one can be held liable for intentional infliction of emotional distress (IIED) if they intentionally engage in extreme and outrageous conduct that result in injury to another. *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996). A conduct is "outrageous in character and extreme in degree, if it goes beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell,* 81 N.Y.2d at 122, 596 N.Y.S.2d 350, 612 N.E.2d 699. Defendants asserted that "Nothing Balogun has alleged, nor any evidence provided, rises to the high standard of "extreme and outrageous conduct" as required for an IIED claim." (See Defs' Memo at pg. 24-25). However, Balogun established the extreme and outrageous prong by showing that he was subjected to "deliberate and malicious campaign of harassment or intimidation," *Nader v. Gen. Motors Corp.,* 25 N.Y.2d 560, 569, 307 N.Y.S.2d 647, 255 N.E.2d 769 (N.Y.1970), and management level employees knew, or should have known, of the unlawful practices and did not exercise reasonable care

55

to prevent them and did not exercise reasonable care to stop the adverse treatment of Balogun, even after repeated opposition to the treatment. *See Supra* at 40-49.

The foregoing evidence showed that Defendants subjected Balogun to different terms, conditions, and privileges of employment; persistent harassing conduct; arbitrary extension of probation; and unjust termination. The evidence further revealed that Balogun repeatedly complained to management about being subjected to unfair treatment at HIU, and Defendants neither provided evidence of any remedial action taken in response to his complaints nor did they acknowledge that he made those complaints.

A rational person will find Defendants conduct atrocious and intolerable in a civilized community likes the State of New York because they are among the prohibited conduct for which Title VII and the NYS Human Rights Laws were created. It goes beyond any bound of decency for any employee, particularly management employee in an agency that is created specifically to enforce human rights laws to be engaged in conduct that can be inferred as violating federal and state human rights laws. Balogun has presented substantial evidence that supports his prima facie showing for IIED claim.

The district court improperly dismissed Balogun's federal law claim and therefore, abused its discretion by failing to exercise supplemental jurisdiction over his state law claims.

## CONCLUSION

For the reasons set forth herein, Balogun respectfully ask that this Court reverse the judgement of the district court with finding of facts in his favor and in the alternative, remand the case for a fair jury trial.

Dated: Queens, New York
     March 12, 2023

          Respectfully Submitted,

          _____
           ABEEB BALOGUN
          Attorney for Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE

I Abeeb Balogun, certify that this brief contains 14,000 words or less.

## CERTIFICATE OF SERVICE

I, Abeeb Balogun, hereby certify under penalty of perjury that on November 7, 2022, I caused to be served by email and United States mail a copy of **APPELLANT'S BRIEF** on Appellees Attorney, David Lawrence III in the matter of *Abeeb Balogun v. New York State Division of Human Rights, et al.*, 22-2756 at the following address:

> David Lawrence III
> Assistant Solicitor General
> NYS Office of the Attorney General
> 28 Liberty Street, 23rd Floor
> New York, NY 10005
> David.Lawrence@ag.ny.gov

59