# 22-2756

## United States Court of Appeals
## for the Second Circuit

---

ABEEB K. BALOGUN,

*Plaintiff-Appellant,*

v.

NEW YORK STATE DIVISION OF HUMAN RIGHTS,
GINA MARTINEZ, ELIZABETH ORTIZ-FELICIANO, IRIS CARRASQUILLO,
MARLENY RUBIO, WILLIAM PLOSKI, ALI JAFRI,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Southern District of New York

---

## BRIEF FOR APPELLEES

---

BARBARA D. UNDERWOOD
 *Solicitor General*
ESTER MURDUKHAYEVA
 *Deputy Solicitor General*
DAVID LAWRENCE III
 *Assistant Solicitor General*
 *of Counsel*

LETITIA JAMES
 *Attorney General*
 *State of New York*
Attorney for Appellees
28 Liberty Street
New York, New York 10005
(212) 416-8023

Dated: July 5, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................iii

PRELIMINARY STATEMENT ................................................................ 1

ISSUE PRESENTED ............................................................................. 4

STATEMENT OF THE CASE ................................................................ 4

    A.   Balogun's Hiring as a Probationary Human Rights
          Specialist 1 Employee ............................................................. 4

    B.   Balogun's Deficient Performance During His Initial
          Probation Period ....................................................................... 7

    C.   Balogun's Deteriorating Performance During His Extended
          Six-Month Probation Period, and His Termination ............... 11

    D.   Balogun's Federal Employment Discrimination Action,
          and the District Court's Summary Judgment Ruling............ 15

STANDARD OF REVIEW..................................................................... 18

SUMMARY OF ARGUMENT ............................................................... 19

ARGUMENT ....................................................................................... 21

    THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT
    TO DEFENDANTS ............................................................................ 21

    A.   Balogun Failed to Raise a Triable Issue of Material Fact
          as to His Employment Discrimination Claim. ...................... 21

        1.   Balogun failed to identify evidence of
            discriminatory intent........................................................ 22

        2.   Balogun failed to identify evidence of pretext. ............... 26

i

**Page**

B. Balogun Failed to Raise a Triable Issue of Material Fact as to the Retaliation Claim. ....................................................... 32

C. Balogun Failed to Raise a Triable Issue of Material Fact as to the Hostile Work Environment Claim. ........................... 34

D. The District Court Properly Declined to Exercise Supplemental Jurisdiction over Balogun's Remaining State Law Claims. .................................................................... 38

CONCLUSION ........................................................................... 39

# TABLE OF AUTHORITIES

**Cases**                                                     **Page(s)**

*Alfano v. Costello*,
294 F.3d 365 (2d Cir. 2002) .............................................................. 35

*Blizzard v. Marion Tech. Coll.*,
698 F.3d 275 (6th Cir. 2012) ............................................................. 25

*Brennan v. Metropolitan Opera Ass'n*,
192 F.3d 310 (2d Cir. 1999) .............................................................. 35

*Busby v. Syracuse City Sch. Dist., Talent Mgmt.*,
715 F. App'x 63 (2d Cir. 2018) .......................................................... 37

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988) ........................................................................... 38

*Chen v. City Univ. of N.Y.*,
805 F.3d 59 (2d Cir. 2015) ........................................................... 18, 29

*DeJarnette v. Corning, Inc.*,
133 F.3d 293 (4th Cir. 1998) ............................................................. 31

*Delaney v. Bank of Am. Corp.*,
766 F.3d 163 (2d Cir. 2014) ........................................................ 27, 30

*Demoret v. Zegarelli*,
451 F.3d 140 (2d Cir. 2006) .............................................................. 36

*Desir v. City of New York*,
453 F. App'x 30 (2d Cir. 2011) .......................................................... 25

*DiCesare v. Town of Stonington*,
823 F. App'x 19 (2d Cir. 2020) .......................................................... 27

*Dister v. Continental Grp., Inc.*,
859 F.2d 1108 (2d Cir. 1988) ............................................................ 29

*Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*,
96 F.3d 623 (2d Cir. 1996) ............................................................ 32-33

**Cases**                                                          **Page(s)**

*Dugan v. Martin Marietta Aerospace,*
   760 F.2d 397 (2d Cir. 1985) .............................................................. 29

*Feingold v. New York,*
   366 F.3d 138 (2d Cir. 2004) .............................................................. 25

*Fleming v. MaxMara USA, Inc.,*
   371 F. App'x 115 (2d Cir. 2010) ........................................................ 36

*Fountain v. Karim,*
   838 F.3d 129 (2d Cir. 2016) .............................................................. 18

*Furr v. Seagate Tech. Inc.,*
   82 F.3d 980 (10th Cir. 1996) ............................................................. 28

*Gerzhgorin v. Selfhelp Cmty. Servs., Inc.,*
   No. 22-208, 2023 WL 2469824 (2d Cir. Mar. 23, 2023) ..................... 25

*Goonewardena v. New York State Workers' Comp. Bd.,*
   788 F. App'x 779 (2d Cir. 2019) ........................................................ 28

*Greenway v. Buffalo Hilton Hotel,*
   143 F.3d 47 (2d Cir. 1998) ................................................................ 22

*Harbulak v. County of Suffolk,*
   654 F.2d 194 (2d Cir. 1981) .............................................................. 18

*Harris v. Forklift Sys., Inc.,*
   510 U.S. 17 (1993) ........................................................................... 35

*Harris v. Warrick County Sheriff's Dep't,*
   666 F.3d 444 (7th Cir. 2012) ............................................................. 25

*Hatch v. Brennan,*
   792 F. App'x 875 (2d Cir. 2019) ........................................................ 33

*Hawkins v. New York State Off. of Mental Health,*
   845 F. App'x 9 (2d Cir. 2021) ............................................................ 27

iv

| Cases | Page(s) |
|---|---|

*Hayden v. Walmart Stores, Inc.*,
　619 F. App'x 22 (2d Cir. 2015) ............................................................ 29

*Holt v. KMI-Cont'l, Inc.*,
　95 F.3d 123 (2d Cir. 1996) .................................................................. 28

*Ineichen v. Ameritech*,
　410 F.3d 956 (7th Cir. 2005) ............................................................... 26

*Jain v. CVS Pharmacy, Inc.*,
　779 F.3d 753 (8th Cir. 2015) ............................................................... 25

*Joseph v. Lincare, Inc.*,
　989 F.3d 147 (1st Cir. 2021) ............................................................... 28

*Kolari v. New York-Presbyterian Hosp.*,
　455 F.3d 118 (2d Cir. 2006) ................................................................ 39

*Krinsky v. Abrams*,
　No. 01-cv-5052, 2007 WL 1541369 (E.D.N.Y. May 25, 2007) ............ 36

*Littlejohn v. City of New York*,
　795 F.3d 297 (2d Cir. 2015) ............................................... 16, 21, 32, 36

*Luxs v. Baxter Healthcare Corp.*,
　467 F.3d 1049 (7th Cir. 2006) ............................................................. 28

*Martinelli v. Penn Millers Ins. Co.*,
　269 F. App'x 226 (3d Cir. 2008) .......................................................... 36

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
　475 U.S. 574 (1986) ............................................................................ 18

*McDonnell Douglas Corp. v. Green*,
　411 U.S. 792 (1973) ............................................................................ 21

*McEvoy v. Fairfield Univ.*,
　844 F. App'x 420 (2d Cir. 2021) .......................................................... 29

**Cases**                                                                  **Page(s)**

*McGowan v. City of Eufala,*
   472 F.3d 736 (10th Cir. 2006) ............................................................. 26

*McLeod v. Jewish Guild for the Blind,*
   864 F.3d 154 (2d Cir. 2017) ............................................................... 18

*McPherson v. New York City Dep't of Educ.,*
   457 F.3d 211 (2d Cir. 2006) ............................................................... 28

*Meiri v. Dacon,*
   759 F.2d 989 (2d Cir. 1985) ............................................................... 29

*Nugent v. St. Lukes-Roosevelt Hosp. Ctr.,*
   303 F. App'x 943 (2d Cir. 2008) ......................................................... 36

*Ofoche v. Apogee Med. Grp., Va., Inc.,*
   815 F. App'x 690 (4th Cir. 2020) ........................................................ 36

*Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs.*
   *Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.,*
   712 F.3d 705 (2d Cir. 2013) ............................................................... 38

*Redd v. New York Div. of Parole,*
   678 F.3d 166 (2d Cir. 2012) ............................................................... 34

*Rivera v. Rochester Genesee Reg'l Transp. Auth.,*
   743 F.3d 11 (2d Cir. 2014) ................................................................. 35

*Rosioreanu v. City of New York,*
   526 F. App'x 118 (2d Cir. 2013) ......................................................... 33

*Ruiz v. County of Rockland,*
   609 F.3d 486 (2d Cir. 2010) .........................................................23-24

*Shackelford v. Deloitte & Touche, LLP,*
   190 F.3d 398 (5th Cir. 1999)............................................................... 28

*Shapiro v. City of New York,*
   649 F. App'x 71 (2d Cir. 2016) .......................................................... 24

vi

## Cases                                              Page(s)

*Slattery v. Swiss Reins. Am. Corp.*,
  248 F.3d 87 (2d Cir. 2001) ..................................................27

*Soderberg v. Gunther Int'l, Inc.*,
  124 F. App'x 30 (2d Cir. 2005) .........................................30

*St. Mary's Honor Center v. Hicks*,
  509 U.S. 502 (1993) ...........................................................29

*Tassy v. Buttigieg*,
  51 F.4th 521 (2d Cir. 2022) ..............................................37

*Texas Dep't of Cmty. Affs. v. Burdine*,
  450 U.S. 248 (1981) ...........................................................21

*Thomas v. Johnson*,
  788 F.3d 177 (5th Cir. 2015) ............................................25

*Tolbert v. Smith*,
  790 F.3d 427 (2d Cir. 2015) .......................................23, 37

*Tubo v. Orange Reg'l Med. Ctr.*,
  690 F. App'x 736 (2d Cir. 2017) .......................................31

*Vega v. Hempstead Union Free Sch. Dist.*,
  801 F.3d 72 (2d Cir. 2015) ...........................................21-22

*Waite v. Board of Trs. of Ill. Cmty. Coll. Dist. No. 508*,
  408 F.3d 339 (7th Cir. 2005) ............................................27

## Laws & Rules

*Federal*

42 U.S.C. § 2000e et seq. ....................................................15

Fed. R. Civ. P. 56 ...............................................................18

**Laws & Rules**                                                    **Page(s)**

*New York*

Executive Law § 293 et seq. ........................................................ 4

Civil Service Rule (4 N.Y.C.R.R.) § 4.5 ................................... 6-7

## PRELIMINARY STATEMENT

In this employment discrimination suit, plaintiff-appellant Abeeb Balogun asserts that his former employer, defendant-appellee New York State Division of Human Rights (DHR), discriminated against him on the basis of race, sex, and national origin, retaliated against him, and subjected him to a hostile work environment by extending his probationary period and ultimately terminating him. The U.S. District Court for the Southern District of New York (Schofield, J.) granted summary judgment to DHR on Balogun's federal Title VII claims and declined to exercise supplemental jurisdiction over his state law claims.[1] This Court should affirm.

DHR hired Balogun as a human rights specialist tasked with investigating complaints of housing discrimination and preparing investigatory reports. Like all other employees hired for the position, Balogun was required to serve a one-year probationary period prior to beginning permanent employment with the agency. During that one-year

---

[1] The district court also granted summary judgment to several individual defendants on the ground that they were not Balogun's employers. (Appellant's Appendix 21 (CA2 ECF Nos. 59-61).) Balogun does not challenge that ruling on appeal.

period, Balogun failed to complete the required number of case investigations and routinely submitted deficient written reports.

Although DHR had the right to terminate Balogun at the end of his initial probationary period, DHR extended the period by six months to allow Balogun an additional opportunity to improve his performance. During the extended probationary period, Balogun's case production continued to fall far short of the required pace, and he continued to submit reports containing errors. In addition, Balogun became increasingly insubordinate and resistant to supervision. DHR therefore terminated Balogun at the conclusion of his extended probationary period.

The district court correctly granted summary judgment to defendants on Balogun's Title VII claims. First, Balogun failed to raise a triable issue of material fact as to whether DHR acted with discriminatory intent. Balogun conceded that he never heard his supervisors make statements concerning his race, sex, or national origin and instead argued that discrimination could be inferred from the comparative treatment of other human rights specialists. The district court properly concluded that the comparators were not similarly situated and therefore insufficient to support an inference of discrimination. Likewise, the district court properly

concluded that Balogun failed to raise a triable issue of material fact as to pretext, given the extensive evidence that Balogun's termination was justified by his extensive performance defects.

Second, the district court correctly held that Balogun failed to raise a triable issue of material fact as to Balogun's retaliation claim, as he failed to show any evidence that he engaged in conduct protected by Title VII. Indeed, Balogun did not complain of purported race, sex, or national origin discrimination until after he had been terminated.

Third, the district court correctly held that Balogun failed to raise a triable issue of material fact on his hostile work environment claim, as, among other things, he conceded that his supervisors never made remarks or other references to his protected characteristics.

Finally, having disposed of all of Balogun's federal claims, the district court properly exercised its discretion to decline to exercise supplemental jurisdiction over Balogun's state law claims.

## ISSUE PRESENTED

Did the district court properly (i) grant summary judgment to DHR on Balogun's Title VII claims, and (ii) decline to exercise supplemental jurisdiction over Balogun's state law claims?

## STATEMENT OF THE CASE

### A.  Balogun's Hiring as a Probationary Human Rights Specialist 1 Employee

DHR is a state agency tasked with enforcing the New York State Human Rights Law, the State's chief anti-discrimination law. (Supplemental Appendix (S.A.) 151 ¶ 1.) *See* N.Y. Executive Law § 293 et seq. DHR's Housing Investigation Unit (HIU) investigates housing-based discrimination. (S.A. 48 ¶ 4, 152 ¶ 3.)

Balogun self-identifies as a Black male of Nigerian descent. (Appellant's Appendix (A.) 68 ¶ 2.) In April 2018, Balogun applied for employment at DHR and was hired as a Human Rights Specialist (HRS) 1 in HIU. (S.A. 48 ¶¶ 5, 8, 156 ¶ 29.) The position required a one-year probationary period, which in Balogun's case would run from April 26, 2018, to April 25, 2019. (S.A. 114, 153 ¶ 11, 156 ¶ 29.)

4

HRS 1 employees perform preliminary investigations into their assigned cases, including interviewing witnesses, performing outside research and, if necessary, conducting a field visit.[2] (S.A. 54 ¶¶ 6-7, 152.) Cases are assigned to HRS 1 employees by their supervising HRS 2 employees at the beginning of each month, but additional cases may later be assigned based on HIU's needs or at the HRS 1 employee's request. And to assist probationary employees to meet their production requirements, supervisors ensure that such employees have at least twenty open cases at any given time. (S.A. 3 ¶ 9, 55 ¶ 11, 155 ¶ 23.)

An HRS 1 employee must prepare a written report summarizing their investigation and recommending whether a finding of probable cause of discrimination is supported. The report is submitted to the supervising HRS 2, and if approved, sent to HIU's director for approval. Once the director approves the report, the case is considered closed (S.A. 39 ¶ 6, 82

---

[2] HIU policy requires probationary HRS 1 employees to obtain their supervisor's permission before going on a field visit and to be accompanied by either a senior investigator (i.e., a permanent HRS 1 or an HRS 2) or their supervisor. The policy is designed to protect the employee from physical threats and, by providing a witness, to protect the employee and DHR from legal liability. (S.A. 4 ¶ 14, 42 ¶¶ 18-19, 49 ¶ 10, 54-55 ¶ 7, 58 ¶ 25, 82, 87, 154-155 ¶ 21.)

¶ 4, 152-153 ¶¶ 7-8) unless the report finds probable cause of discrimination, in which event a legal supervisor must approve the report and DHR then undertakes further investigation (S.A. 39 ¶ 7, 55 ¶ 10, 153 ¶ 9).

HRS 1 employees must meet a series of job performance requirements known as Tasks and Standards. (S.A. 52, 83 ¶ 8, 153 ¶ 12.) Among many other requirements, the Tasks and Standards require an HRS 1 employee to complete a minimum of 108 cases annually (S.A. 40 ¶ 9, 48, 54 ¶ 4, 57, 83 ¶ 11, 153 ¶ 13) and to accurately enter data into the relevant case management systems within three days of receipt (S.A. 52, 85 ¶ 19, 153 ¶ 15).

Under Civil Service Rule (4 N.Y.C.R.R.) § 4.5, supervisors evaluate probationary employees quarterly. The supervisors prepare a written probation report which, as used by HIU, lists fourteen categories for performance, for each of which the rater checks one of five boxes which range from "excellent" to "unsatisfactory." The report form also includes space for a narrative evaluation. (S.A. 5 ¶¶ 18-19, 54 ¶ 5, 79 ¶ 9, 88-90, 153 ¶ 16.) A probationer's final probation report is submitted shortly before the end of their scheduled probationary term. (S.A. 154 ¶ 18.) 4 N.Y.C.R.R. § 4.5(b)(5)(iii).

If the conduct or performance of a probationary employee is unsatisfactory, the agency may terminate employment at any time after eight weeks. The agency may alternatively choose to offer the probationer an opportunity to serve a second probationary term. (S.A. 78 ¶ 6, 154 ¶ 19.) 4 N.Y.C.R.R. § 4.5. Extended probation is offered when a probationary employee has not met the Tasks and Standards required of the position, but their supervisor believes that the employee has the potential to meet those standards. (S.A. 78 ¶ 7, 154 ¶ 20.)

## B.    Balogun's Deficient Performance During His Initial Probation Period

During his first three months at DHR, Balogun completed only thirteen cases, far below the required pace. In the first quarterly probation report, issued in July 2018, Balogun's supervisor advised him to focus on meeting the case production standard of 108-120 cases per year, or an average of nine to ten cases per month. The supervisor recognized Balogun's interpersonal skills and eagerness to learn but expressed concern that Balogun was failing to closely proofread his submissions for spelling and grammar errors, particularly subject-verb agreement. (S.A. 88-90, 157 ¶ 35.)

7

Defendant Elizabeth Ortiz-Feliciano, then-director of HIU, met with Balogun shortly after his first quarterly probation report. Ortiz explained that Balogun needed to improve the writing of his investigative reports and to make any corrections requested by his supervisor. Ortiz also encouraged Balogun to increase his case production. In response, Balogun disagreed that his reports required correction, claimed to be unable to complete more than seven cases per month, and became angry. (S.A. 83 ¶ 12, 84 ¶ 15, 158 ¶ 42, 160 ¶ 53.)

In August 2018, defendant William Ploski became Balogun's supervisor. (S.A. 1 ¶ 2.) On August 31, Ploski assigned Balogun three Lack of Jurisdiction (LOJ) cases to help Balogun improve his case production rate. LOJ cases are straightforward and can be completed quickly because they require only review of a paper file and the completion of routine forms. (S.A. 3 ¶ 10, 157 ¶ 39.) Ploski directed Balogun to complete the three LOJ cases by the end of the workday, but after Balogun left work at the day's close, Ploski saw that Balogun had not touched them. (S.A. 3 ¶ 11, 158 ¶ 40.) Ploski completed the cases but gave Balogun credit for those cases toward his case production requirement. (S.A. 3-4 ¶ 11, 158 ¶ 41.)

8

Several weeks later, Balogun met with Ploski, defendant Marleny Rubio, an HRS 2 supervisor, and defendant Ali Jafri, DHR's director of human resources, to discuss his failure to complete the three LOJ cases assigned by Ploski. Ploski said that Balogun could easily have accomplished each in ten minutes or less. (S.A. 144:15-17, 145:19-22, 147:21-22.) Ploski described the LOJ cases as "freebie[s]" and a "gift" to "bump[] up" Balogun's case production, but Balogun denied any need for a "gift" or for increasing his case production. (S.A. 146:1-4, 148:10-11.) Ploski further stated that he wanted Balogun to succeed and do well and wanted to help Balogun in any way he could to do so. (S.A. 149:10-18).

Ploski continued to monitor Balogun's case load and spoke to him nearly every day to help him meet his required case production. (S.A. 2 ¶ 4, 3 ¶ 8, 157 ¶ 38.) During Balogun's second quarter, he met the prorated annual case production requirement by completing thirty cases. Ploski acknowledged Balogun's increased productivity in the second quarter probation report, issued in October 2018. Ploski also recognized Balogun's ability to write satisfactory reports in simpler cases but advised Balogun to improve his writing skills in complex cases, to hone his investigative

skills, and to increase his knowledge of fair housing laws. (S.A. 21-23, 157 ¶ 36.)

During the third quarter of his probation period, Balogun's case production plummeted to nineteen cases. In December 2018, defendant Gina Martinez, the deputy commissioner of DHR, met with Balogun and urged him to "step up his game" on case production. (S.A. 48 ¶ 8, 158 ¶ 43.) In the third quarter probation report, issued in January 2019, Ploski advised Balogun to increase his case production, improve his writing skills for complex cases, increase his knowledge of fair housing laws, and hone his investigative skills. (S.A. 24-26, 157 ¶ 37.)

In Balogun's fourth-quarter probation report, issued in April 2019, Ploski observed that for the entire year's probation, Balogun had averaged only seven to seven-and-one-half cases completed per month, below the expected minimum of nine per month, and that he failed to complete the minimum of 108 cases required of HRS1 employees. (S.A. 28; *see* S.A. 56 ¶ 15, 83 ¶ 11.), Ploski further indicated that Balogun continued to struggle with submitting error-free reports. (S.A. 28.)

Although DHR had the right under Civil Service Rule § 4.5(a) to terminate Balogun at the end of the initial probationary period (S.A. 165

¶ 77), Ploski recommended that Balogun receive an extended probation period to demonstrate that he could meet the job's requirements. (S.A. 28.) DHR ultimately offered, and Balogun accepted, an extended six-month probation period from April 25 to October 24, 2019. (S.A. 41 ¶ 12, 115, 165 ¶¶ 78, 80.) In the offer letter, DHR informed Balogun that his work performance, attendance, and behavior must meet acceptable standards or his appointment would be terminated before the period ended. (S.A. 115, 165 ¶ 79.)

## C.  Balogun's Deteriorating Performance During His Extended Six-Month Probation Period, and His Termination

At the start of his extended probation period, Balogun asked Jafri to reassign him to a different unit within DHR. Jafri responded that because DHR is a small agency and Balogun had been hired specifically for HIU, a transfer to a different unit was not possible. (S.A. 136-137, 141.) But because Balogun expressed interest in reporting to a supervisor other than Ploski (S.A. 137), Balogun was reassigned to Rubio (S.A. 41 ¶ 13, 56 ¶ 14, 156 ¶ 33). Rubio met with Balogun weekly to discuss his caseload, reviewed his investigation plans, made phone calls for his

investigations, and helped him mail letters to witnesses. (S.A. 56-57 ¶ 17, 159 ¶ 48.)

Nevertheless, Balogun continued to fall short of the prorated case production goals. In the first three months of the extended probation period, Balogun completed only twenty-five cases. In the next two and a half months, Balogun completed only thirteen cases. (S.A. 33-37, 57 ¶ 19, 158 ¶ 45.) In Balogun's first quarterly extended probation report, issued in July 2019, Rubio wrote that Balogun struggled with timeliness and case production. She further noted that Balogun continued to make grammatical errors in his reports and failed to enter case information into HIU's case management system within the required three days. (S.A. 69-71.)

Balogun also became increasingly insubordinate during the extended probationary period. For instance, Balogun routinely disobeyed DHR's policy that HRS 1 employees must be accompanied on field visits, notwithstanding repeated reminders and directives from his supervisors. (S.A. 42 ¶ 20, 44-46, 49 ¶ 10, 58 ¶ 28, 59-60, 82 ¶ 6, 87, 109:4-9, 161 ¶¶ 57-59.) Balogun was also insubordinate by repeatedly refusing Rubio's directive to conduct a second field visit in a particular matter. (S.A. 58 ¶ 24, 68,

162 ¶ 61.) And on several occasions when Rubio told Balogun to rewrite parts of reports, he suggested that she do so herself. (S.A. 57 ¶ 21, 160 ¶ 54.)

Because of Balogun's failure to meet the performance requirements for an HRS 1, Rubio and defendant Iris Carrasquillo, who succeeded Ortiz as director of HIU, recommended his termination. (S.A. 41 ¶ 15, 59 ¶ 32, 166 ¶ 83.) Thus, Balogun's final probation report, issued in October 2019, declared his probation terminated on numerous grounds. These included, inter alia, his longtime failure to meet case production targets,[3] his frequent insubordination, and various deficiencies in his written reports such as their continued grammatical errors, his ongoing failure to closely proofread the reports, and the reports' insufficient reasoning. (S.A. 73-76, 166-167 ¶¶ 87-96.)

At an October 10 meeting, Jafri and Rubio gave Balogun the final probation report and orally informed him that he was being terminated

---

[3] The final report misstated the total number of cases submitted by Balogun for closing during the period of his employment as 109. The quarterly probation reports discussed *supra* (at 7, 9-10) stated correct quarterly figures, and defendants have not relied on the erroneous total figure of 109 in this litigation.

for unsatisfactory performance. (S.A. 126-127.) Jafri told him that he must immediately pack his things, turn in any keys and identification cards, and leave the premises, but that he would remain on the payroll on leave for another week. (S.A. 128-129.)

After the termination meeting, Balogun went back to his office, typed on his computer, and insisted, contrary to Jafri's directive, that he be allowed until the end of the day to pack his things and leave. (S.A. 60 ¶ 36, 132.) Martinez therefore summoned security personnel who calmly escorted Balogun from the building. (S.A. 51 ¶ 20, 61 ¶ 37, 133, 167-168 ¶ 97.) Rubio then packed up Balogun's personal belongings which she saw in his office and mailed them to him; another employee gathered Balogun's remaining personal belongings which Balogun picked up later that week. (S.A. 51 ¶ 21, 61 ¶ 38, 168 ¶ 98.)

On April 23, 2020, Balogun filed a charge of discrimination based on race, sex, national origin, and retaliation with the U.S. Equal Employment Opportunity Commission (EEOC). After DHR answered the charge in June 2020, the EEOC issued a right-to-sue letter in September 2020. (S.A. 169.)

### D. Balogun's Federal Employment Discrimination Action, and the District Court's Summary Judgment Ruling

In December 2020, Balogun commenced this federal action in the U.S. District Court for the Southern District of New York. In the operative complaint (A. 68-129), Balogun asserts claims against DHR and the individual defendants under Title VII, 42 U.S.C. § 2000e et seq., for discrimination based on his race, sex, and national origin, a hostile work environment, and retaliation as well as state law claims for breach of contract, promissory estoppel, interference with a contractual relationship, and intentional infliction of emotional distress. (A. 68-70.)

After discovery, defendants moved for summary judgment. Among defendants' submissions in support of the motion was a compact disc containing transcripts of certain conversations between Balogun and defendants or other DHR personnel during his employment which he had secretly recorded and had turned over to defendants in discovery. (S.A. 99-100 ¶¶ 10-16.) In opposition to the motion, Balogun submitted twenty-five pages of transcribed excerpts (A. 162-186) of some of the recorded conversations and a compact disc containing audio recordings of all of the recorded conversations (Letter from Balogun to Pro Se Office (Feb. 25, 2022), Dist. Ct. ECF No. 105).

15

By opinion and order dated September 16, 2022, the district court (Schofield, J.) granted summary judgment to DHR on the Title VII claims.[4] The court held that Balogun did not meet his burden to allege facts raising an inference of discrimination where he admitted that he had never heard his supervisors make any statements concerning his race, sex, or national origin, and his contention that discrimination should be inferred because he was treated differently from other HRS 1 employees failed because he had not identified evidence from which a reasonable jury could find that he was similarly situated in all material respects to his proposed comparators. (A. 23.) The court further ruled that defendants had produced evidence that Balogun was terminated for a nondiscriminatory reason, namely his failure to meet the Tasks and Standards requirements during his probation, and no reasonable jury could find on the record here that the termination was motivated by Balogun's race, sex, or national origin. (A. 26-27.)

---

[4] The court also held that the individual defendants were entitled to summary judgment on the Title VII claims because that statute does not create liability for individual supervisors and coworkers who are not the plaintiff's employers. (A. 21 (citing *Littlejohn v. City of New York*, 795 F.3d 297, 313 (2d Cir. 2015)).) Balogun does not challenge this ruling on appeal.

16

The court similarly ruled that DHR was entitled to summary judgment on Balogun's retaliation claim. (A. 29.) In particular, the court held, the evidence did not show that Balogun had engaged in protected activity nor that his termination for deficient job performance was pretextual. (A. 29, 31.) Likewise, the court ruled that Balogun had not proffered evidence from which a reasonable jury could find in his favor on his hostile work environment claim, given the absence of any evidence that defendants engaged in conduct permeated with intimidation, ridicule, and insult. (A. 27-28 (citing *Littlejohn*, 795 F.3d at 320-21).)

Finally, having dismissed all of Balogun's federal claims, the court declined to exercise supplemental jurisdiction over his state law claims against defendants in their individual capacities.[5] (A. 33.)

---

[5] The court separately held that the Eleventh Amendment bars Balogun's state law claims against DHR and the individual defendants in their official capacities. (A. 32-33.) Balogun does not challenge that ruling on appeal.

17

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo, construing the evidence in the light most favorable to the nonmoving party. *Chen v. City Univ. of N.Y.*, 805 F.3d 59, 69 (2d Cir. 2015). A district court's decision to decline supplemental jurisdiction over state law claims is reviewed for abuse of discretion. *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016).

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). There is no genuine issue of fact when the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although pro se briefs and pleadings are generally construed liberally, *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156-57 (2d Cir. 2017), Balogun's papers are not entitled to that special consideration because he is an attorney, *see Harbulak v. County of Suffolk*, 654 F.2d 194, 198 (2d Cir. 1981). (S.A. 38-39 ¶ 3.)

## SUMMARY OF ARGUMENT

The district court properly granted summary judgment to DHR.

First, Balogun failed to raise a triable issue of material fact as to his Title VII discrimination claim. Balogun conceded that his supervisors never made a comment or gave any other outward indication of discriminatory intent and therefore argued only that discrimination should be inferred from his purportedly differential treatment. But as the district court correctly found, each of the comparator cases identified by Balogun involved materially distinct circumstances and the underlying employees were therefore not similarly situated. Furthermore, the record is clear that DHR had legitimate, nondiscriminatory reasons for terminating Balogun—his continuing failures to complete a sufficient number of cases, his recurring insubordination, and his unremedied writing deficiencies. Balogun failed to identify any evidence to support his argument that such reasons were pretextual.

Second, Balogun failed to raise a triable issue of material fact as to his Title VII retaliation claim. As the district court correctly noted, the summary judgment record contained no evidence that Balogun engaged in any protected activity during his DHR employment. Indeed, Balogun's

first complaint of discrimination was raised during his post-termination EEOC charge. And in any event, as with his discrimination claim, Balogun does not demonstrate that the valid reasons for his extended probation and termination were pretexts for alleged retaliation.

Third, Balogun failed to raise a triable issue of material fact as to his Title VII hostile work environment claim. The district court correctly found that the record lacked any evidence of discriminatory intimidation, ridicule, and insult, much less that such conduct was severe or pervasive. Balogun's claim is predicated entirely on unfavorable performance evaluations and purportedly excessive scrutiny of his work performance which, under well-established law, do not establish a hostile work environment.

Finally, having disposed of all of Balogun's federal claims, the district court properly exercised its discretion to decline to exercise supplemental jurisdiction over Balogun's state law claims.

## ARGUMENT

### THE DISTRICT COURT PROPERLY GRANTED
### SUMMARY JUDGMENT TO DEFENDANTS

**A.  Balogun Failed to Raise a Triable Issue of Material Fact as to His Employment Discrimination Claim.**

This Court analyzes discrimination claims under Title VII under the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see Littlejohn*, 795 F.3d at 312. Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing that (1) he or she is a member of a protected class, (2) he or she is qualified for his or her position, (3) he or she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015).

Once this burden is met, the defendant must then articulate a legitimate, nondiscriminatory reason for its action. *Id*. The defendant need not persuade the court that it was actually motivated by the proffered reason. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff, *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981), by articulating an explanation

21

that, if true, would connote lawful behavior, *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998). When the defendant meets its burden, the burden shifts back to the plaintiff to prove that the defendant's proffered reason was a pretext for discrimination. *Vega*, 801 F.3d at 83.

The district court properly granted summary judgment to DHR on Balogun's discrimination claim because he failed to raise a triable issue of material fact as to whether (i) DHR acted with a discriminatory intent and (ii) DHR's legitimate reasons for taking adverse employment actions were pretextual.

### 1. Balogun failed to identify evidence of discriminatory intent.

The district court correctly concluded that Balogun failed to identify evidence from which a reasonable jury could conclude that DHR's decisions to extend Balogun's probationary period and subsequently to terminate his employment were made under circumstances giving rise to an infer-

ence of discrimination.[6] (A. 22-23.) Therefore, Balogun failed to establish a prima facie case of discrimination.

It is undisputed that defendants never made explicit or implicit statements regarding Balogun's race, sex, or national origin. (S.A. 103:2-104:2, 105:13-106:13, 107:5-108:2, 168 ¶¶ 99-101.) Accordingly, Balogun's sole theory of discriminatory intent is DHR's purportedly more favorable treatment of six employees of other races and national origins. Specifically, Balogun asserts that four other DHR employees similarly failed to complete fewer than 108 cases during their probation period and were not subject to extended probation or terminated. Br. of Appellant (Br.) at 25-28. In addition, Balogun argues that two DHR employees were offered counseling sessions in lieu of termination despite workplace misconduct. (A. 52-55.) *See* Br. at 37.

An inference of discrimination based on disparate treatment is permissible only when a comparator is similarly situated to the plaintiff in all material respects. *Ruiz v. County of Rockland*, 609 F.3d 486, 494

---

[6] DHR assumes for purposes of this appeal that the extension of Balogun's probation and his termination constitute adverse employment actions. *See Tolbert v. Smith*, 790 F.3d 427, 436 (2d Cir. 2015).

23

(2d Cir. 2010). To be similarly situated, employees must be "subject to the same performance evaluation and discipline standards" and must have "engaged in comparable conduct." *Id.* at 493-94 (quotation marks omitted).

The district court correctly ruled that Balogun was not similarly situated to four employees who he asserts completed fewer than 108 cases during their probation period and were not subject to extended probation or terminated.[7] (A. 23-24.) As the district court explained, Balogun failed to identify any evidence that these comparators engaged in comparable conduct, i.e., neither shortcomings in their case production[8] nor deficient writing skills and frequent insubordination. It is well settled that an employee who exhibits performance deficiencies that his comparator lacks is not similarly situated. *See, e.g.*, *Shapiro v. City of New York*, 649 F.

---

[7] Defendants dispute that the comparators failed to complete 108 cases. (S.A. 4 ¶ 13, 57 ¶ 20, 164 ¶ 74.)

[8] Balogun's assertion (Br. at 26-27) that he was assigned an insufficient number of cases to meet his case production requirements is unsupported by the record (S.A. 33-37, 157 ¶ 34) and disregards the undisputed fact that he could have requested additional cases from his supervisors (S.A. 3 ¶ 9, 55 ¶ 11, 155 ¶ 23).

App'x 71, 74 (2d Cir. 2016) (summary order); *Jain v. CVS Pharmacy, Inc.*, 779 F.3d 753, 759 (8th Cir. 2015); *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 287 (6th Cir. 2012); *Harris v. Warrick County Sheriff's Dep't*, 666 F.3d 444, 449 (7th Cir. 2012).

The district court likewise correctly rejected Balogun's remaining comparators. (A. 24-25.) Balogun's proposed comparator of a permanent employee who received counseling instead of termination after an angry dispute with a supervisor fails because permanent employees are not similarly situated to probationary employees. *See Thomas v. Johnson*, 788 F.3d 177, 180 (5th Cir. 2015) (collecting cases); *Desir v. City of New York*, 453 F. App'x 30, 34 (2d Cir. 2011) (summary order) (probationary employee not similarly situated to tenured employees).[9] And the final comparator, an individual who received counseling instead of termination after making a sexually oriented gesture at a holiday dinner,[10] is not

---

[9] *See also Gerzhgorin v. Selfhelp Cmty. Servs., Inc.*, No. 22-208, 2023 WL 2469824, at *2 (2d Cir. Mar. 23, 2023) (summary order); *Feingold v. New York*, 366 F.3d 138, 153 (2d Cir. 2004) (probationary and permanent employees were not similarly situated as to conditions under which they could be terminated).

[10] *See* Pl.'s Mem. of Law in Opp'n to Defs.' Summ. J. Mot., Ex. 68 (Feb. 12, 2022), Dist. Ct. ECF No. 100, p. 133.

similarly situated because she engaged in materially different conduct. *See McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006); *Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir. 2005).

Finally, Balogun is wrong to argue (Br. at 33, 36) that the transcripts of his conversations with various DHR employees give rise to an inference of discrimination. To the contrary, the transcripts contain no reference, even implicit, to Balogun's race, sex, or national origin. (A. 31.)

## 2. Balogun failed to identify evidence of pretext.

The district court also correctly found that Balogun failed to raise a triable issue of material fact as to whether DHR's extension of his probation period and ultimate decision to terminate him was pretextual. (A. 26-27.) The record establishes that DHR extended Balogun's probation and ultimately terminated him for legitimate, nondiscriminatory reasons, including his repeated failures to meet his case production requirements, his submission of investigative reports with numerous spelling and grammar errors and, particularly in the extended probation period, his frequent insubordination. See *supra* at 7-10. Contrary to Balogun's assertion (Br. at 23-24, 27-28), his performance deficiencies were persistent and lasted through the entire period of his employment at DHR. See

26

*supra* at 7-13. Indeed, DHR could rightfully have terminated Balogun for those deficiencies at the end of his initial annual probationary period under Civil Service Rule § 4.5(a). And when DHR gave Balogun a second chance to improve his performance by providing him with an extended probation period, his performance shortcomings worsened, including his increasing insubordination.

It is well established that poor work performance is a legitimate, nondiscriminatory reason to place an employee on probation, *e.g.*, *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 93 (2d Cir. 2001), or to terminate the employee, *e.g.*, *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014), particularly in conjunction with insubordination, *e.g., Hawkins v. New York State Off. of Mental Health*, 845 F. App'x 9, 11 (2d Cir. 2021) (summary order); *DiCesare v. Town of Stonington*, 823 F. App'x 19, 24 (2d Cir. 2020) (summary order). Indeed, insubordination alone can suffice to justify a termination. *See, e.g.*, *Waite v. Board of Trs. of Ill. Cmty. Coll. Dist. No. 508*, 408 F.3d 339, 345 (7th Cir. 2005).

A plaintiff demonstrates pretext by putting forth adequate evidence to support a rational finding that (a) the legitimate nondiscriminatory reasons proffered by defendants for the adverse employment action were

27

false, and (b) more likely than not the plaintiff's protected characteristic was the real reason for the action. *E.g.*, *Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996). And in a discrimination case, the courts are not interested in the truth of the allegations against the plaintiff, rather only in what motivated the employer. *E.g.*, *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006); *see Joseph v. Lincare, Inc.*, 989 F.3d 147, 160 (1st Cir. 2021). Therefore, the issue here is not whether or to what degree Balogun's job performance was actually inadequate, but rather how DHR perceived his performance. *See Goonewardena v. New York State Workers' Comp. Bd.*, 788 F. App'x 779, 782 (2d Cir. 2019) (summary order); *Luxs v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1056 (7th Cir. 2006); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408-09 (5th Cir. 1999); *see also Furr v. Seagate Tech. Inc.*, 82 F.3d 980, 988 (10th Cir. 1996).

Balogun fails to cite any evidence that DHR did not believe that his performance was deficient in the ways which DHR documented in the probation reports and that such deficiencies justified his extended proba-

tion and ultimate termination.[11] *See McEvoy v. Fairfield Univ.*, 844 F. App'x 420, 421 (2d Cir. 2021) (summary order); *Chen*, 805 F.3d at 74. To be sure, as Balogun notes (Br. at 31, 39), a "factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination," *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993). But a plaintiff meets that burden only where, unlike here, the employer's business decision was so lacking in merit as to call into question its genuineness. *See Hayden v. Walmart Stores, Inc.*, 619 F. App'x 22, 24 (2d Cir. 2015) (summary order); *Dister v. Continental Grp., Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988). No reasonable juror could reach such a conclusion in this case, and, as

---

[11] Balogun errs by arguing (Br. at 23) that DHR's demands on him were illegitimate or arbitrary. To the contrary, the Tasks and Standards applicable to Balogun applied to all HRS1 employees. Further, the case law upon which he inaptly relies for his argument concerns the second prong of a plaintiff's prima facie case, i.e., whether the employee was qualified for the position, *see Meiri v. Dacon*, 759 F.2d 989 (2d Cir. 1985) (cited in Br. at 23), an issue that the district court did not reach here. *See Dugan v. Martin Marietta Aerospace*, 760 F.2d 397, 400 (2d Cir. 1985) (upholding termination due to unsatisfactory performance, regardless of qualifications).

explained (*supra* at 22-26), Balogun failed to establish a prima facie case in any event.

Balogun raises several other arguments, none of which are sufficient to establish a triable issue of material fact as to pretext. For example, Balogun notes that some of his probation reports contained positive comments, that some of his probation reports did not identify every deficiency ultimately cited in the termination decision, that his supervisors should have made more effort to check in on his case production targets, and that his work was favorably perceived by his coworkers and intern. *See* Br. at 35, 37, 42. But courts do not sit as super-personnel departments that re-examine an employer's decisions regarding what constitutes satisfactory work performance or micromanage the ways in which supervisors convey feedback to low-performing employees. *Soderberg v. Gunther Int'l, Inc.*, 124 F. App'x 30, 32 (2d Cir. 2005) (summary order); *Delaney*, 766 F.3d at 169. The fact that Balogun's supervisors praised aspects of his performance at times (*see, e.g.*, A. 164, 185) is further proof that they acted in good faith and wanted him to succeed—the very opposite of discrimi-

natory animus or pretextual action.[12] And the opinions of his coworkers
and intern are nearly irrelevant in proving discrimination. *Tubo v. Orange
Reg'l Med. Ctr.*, 690 F. App'x 736, 740 (2d Cir. 2017) (summary order);
*DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998).

Similarly, Balogun misses the mark in arguing that his refusal to
comply with DHR's policies regarding field visits was not insubordinate.
Among other things, Balogun contends that DHR's policies improperly
interfered with his ability to complete his cases, and that he did not, in
fact, make field visits without his supervisor's permission. Br. at 36; *see
id.* at 37, 41. As noted above (at 5 n.2), DHR's policy regarding field visits

---

[12] Balogun also does not raise a triable issue as to pretext by his
argument that Ploski and Carasquillo told him that he would be "passed"
to permanent status if he completed twenty-seven cases in the first three
months of his extended probation period. Br. at 32 (citing A. 165-166).
Martinez later told Balogun that he "should not have been told or expected"
that his employment could be made permanent after three months'
extended probation, and that terminating one's extended probation after
three months would be inconsistent with DHR's practice. (A. 169; S.A. 118-
122.)

In any event, Balogun completed only twenty-five cases in those
three months. (S.A. 57 ¶ 18.) Although Balogun argues that he should
have been given credit for two additional cases (Br. at 33-34), such cases
were not included because Balogun's reports had not been approved by
his supervisor at the conclusion of the quarter. (S.A. 50 ¶ 12; *see* S.A. 55
¶ 9.)

required probationary HRS 1 employees to receive a supervisor's permission before going on a field visit and to be accompanied by a more senior employee, in order to safeguard the employee's physical safety and to protect the employee and DHR from legal liability. (S.A. 4 ¶ 14, 42 ¶¶ 18-19, 49 ¶ 10, 54-55 ¶ 7, 58 ¶ 25, 82 ¶¶ 6-7, 87, 154-155 ¶ 21.) Balogun's disagreement with the wisdom of that policy does not give rise to an inference of pretext, and the record directly establishes that Balogun made at least one field visit without permission. (A. 155-156.)

## B. Balogun Failed to Raise a Triable Issue of Material Fact as to the Retaliation Claim.

The district court also properly granted summary judgment to DHR on Balogun's retaliation claim. (A. 29-31.) To establish a prima facie case of retaliation under Title VII, a plaintiff must prove: (1) participation in a protected activity, (2) defendant's knowledge of that activity, (3) an adverse employment action, and (4) a causal connection between the protected activity and the adverse action. *Littlejohn*, 795 F.3d at 316. The burden then shifts to the defendant to demonstrate a legitimate nondiscriminatory reason for its decision. *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 634 (2d Cir. 1996). If such a reason is

articulated, the plaintiff must then prove that the proffered reason was a pretext for retaliation and that the defendant's real motivation was the impermissible retaliatory motive. *Id.*

The district court correctly held that Balogun's retaliation claim fails at all three stages of this inquiry. (A. 29-31.)

First, contrary to Balogun's arguments (Br. at 46-47), he did not engage in protected activity because there is no evidence that he ever complained of race, sex, or national origin-based discrimination while employed by DHR. To be sure, Balogun made generalized complaints that his supervisors were "after" him (A. 186), raised "concerns about the supervision [he was] getting" (A. 179), stated that his quarterly evaluation report was inaccurate and that he should not have been subject to continued probation (A. 169-171; *see also* A. 131-132), and protested that he was "not happy [with] the way [he was] being treated" (A. 172; *see also* A. 194); but none of these grievances ever referenced race, sex, or national origin discrimination. Generalized grievances about the workplace are insufficient to protected activity. *See Hatch v. Brennan*, 792 F. App'x 875, 880 (2d Cir. 2019) (summary order); *Rosioreanu v. City of New York*, 526 F. App'x 118, 120 (2d Cir. 2013) (summary order).

Second, DHR proffered evidence of nonretaliatory, performance-based reasons for extending Balogun's probation and subsequently terminating him. These included, inter alia, his failure to meet case-production targets, his insubordination, and his continued writing deficiencies. See *supra* at 7-13. Balogun failed to prove that those reasons were pretexts for retaliation. As support for his claim of pretext, Balogun simply relies on the same evidence which he asserts establishes that his work performance was satisfactory and raises an inference of discrimination. Br. at 48 (citing *id.* at 32-37). Balogun's evidence is as insufficient to raise an issue of material fact as to pretext on the retaliation claim as it was to establish pretext on the discrimination claim.

## C. Balogun Failed to Raise a Triable Issue of Material Fact as to the Hostile Work Environment Claim.

The district court properly granted summary judgment to DHR on Balogun's hostile work environment claim as well. (A. 27-29.) To establish a hostile work environment claim, a plaintiff must show that, because of his or her race or other protected characteristic, *Redd v. New York Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012), he or she was subjected to discriminatory intimidation, ridicule, and insult that is sufficiently severe

or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment, *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014). As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). By contrast, isolated, minor acts or occasional episodes do not warrant relief. *Brennan v. Metropolitan Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999).

Whether the conditions of a work environment are objectively abusive or hostile is measured by looking at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Here, the district court correctly held that Balogun failed to establish any harassing conduct, much less conduct that was severe or pervasive, or occurred because of his race, national origin, or sex. (A. 27-28.) A hostile work environment is not established simply by allegations, such as Balogun asserts here (Br. at 41), of alleged erroneous job performance evalua-

tions[13] or excessive scrutiny of one's work performance.[14] Balogun's other allegations of harassment involve, at most, simply good-faith differences of opinion between Balogun and his supervisors. These include Balogun's allegations that he was "needlessly scold[ed]" for failing to complete the three Lack of Jurisdiction matters (Br. at 44; see *supra* at 8), that upon his extended probation he should have been transferred to another unit (Br. at 42-43; see *supra* at 11), that during the first quarter of his extended probation, Rubio should have credited him with completing twenty-seven rather than twenty-five cases (Br. at 42; see *supra* at 31 n.12), and that his employment should have been made permanent for his having completed those twenty-seven cases (Br. at 43; see *supra* at 31

---

[13] *See Littlejohn*, 795 F.3d at 321 (involving employer's negative statements about plaintiff and wrongful reprimands); *Ofoche v. Apogee Med. Grp., Va., Inc.*, 815 F. App'x 690, 693 (4th Cir. 2020) (employer's criticism of plaintiff's communication skills); *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (summary order) (excess criticism of plaintiff's work); *Krinsky v. Abrams*, No. 01-cv-5052, 2007 WL 1541369, at *10 (E.D.N.Y. May 25, 2007) (several negative performance evaluations), *aff'd*, 305 F. App'x 784 (2d Cir. 2009) (summary order).

[14] *See Martinelli v. Penn Millers Ins. Co.*, 269 F. App'x 226, 230 (3d Cir. 2008) (involving "unpleasant and annoying" scrutiny of plaintiff's work); *Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F. App'x 943, 945 (2d Cir. 2008) (summary order) (supervisor's "intense scrutiny" of plaintiff); *Demoret v. Zegarelli*, 451 F.3d 140, 150 (2d Cir. 2006) (supervisor's "close monitoring" of plaintiff's work).

n.12). And Balogun's claim that after his termination, he was "forcibly remov[ed]" from the building (Br. at 42) is contrary to the record (see s*upra* at 14), and there is nothing extraordinary about requiring an employee to leave the premises promptly upon their termination. Furthermore, Balogun's assertion that Martinez and Ploski threatened him (Br. at 42-43) is entirely unsupported by the record and is in fact belied by the transcripts of his meetings with them.

Summary judgment was also appropriate because, as with his discrimination claim, Balogun provides no direct evidence of a discriminatory motive for any allegedly harassing conduct. *See Tassy v. Buttigieg*, 51 F.4th 521, 533-35 (2d Cir. 2022); *see also Busby v. Syracuse City Sch. Dist., Talent Mgmt.*, 715 F. App'x 63, 64 (2d Cir. 2018) (summary order); *Tolbert*, 790 F.3d at 439. Instead, he relies on his meritless contention that he was treated less favorably than his purported comparators (Br. at 44-45), which fails for the reasons explained above (at 23-26). Balogun also asserts baselessly that DHR's purported harassment of him "progressively escalated" (Br. at 45) and argues that an inference of discrimination can arise from "'the sequence of events leading to a plaintiff's discharge'"

37

(*id.* (quoting *Littlejohn*, 795 F.3d at 312)). But no reasonable jury could reach such an inference based on this record.

**D.  The District Court Properly Declined to Exercise Supplemental Jurisdiction over Balogun's Remaining State Law Claims.**

Finally, the district court properly declined to exercise supplemental jurisdiction over Balogun's remaining state law claims. In deciding whether to exercise supplemental jurisdiction, district courts should consider judicial economy, convenience, fairness, and comity. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

When, as here, all federal law claims are eliminated before trial, the balance of these factors will point toward declining to exercise jurisdiction over the remaining state law claims. *See id.*; *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013). This principle is particularly true where, as here, there is no extraordinary inconvenience or inequity occasioned by permitting the claims to be refiled in state court.[15]

_____

[15] Because the district court did not deny amendment based on futility, this Court need not address Balogun's arguments (Br. at 50-56) that his state law claims purportedly state a claim. Appellees reserve the

(*continued on the next page*)

*See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 123-24 (2d Cir. 2006).

## CONCLUSION

Based on the foregoing, this Court should affirm the September 16, 2022, judgment of dismissal.

Dated:  New York, New York
        July 5, 2023

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Appellees

By:  */s/ David Lawrence III*
     DAVID LAWRENCE III
     Assistant Solicitor General

BARBARA D. UNDERWOOD             28 Liberty Street
  *Solicitor General*            New York, NY 10005
ESTER MURDUKHAYEVA               (212) 416-8023
  *Deputy Solicitor General*
DAVID LAWRENCE III
  *Assistant Solicitor General*
    *of Counsel*

---

right to raise any argument about the sufficiency of Balogun's pleading in the appropriate forum.

39

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Kelly Cheung, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 7,651 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7) and Local Rule 32.1.


   */s/ Kelly Cheung*

## CERTIFICATE OF SERVICE

I hereby certify that, on July 6, 2023, I served or caused to be served one copy of the accompanying Brief for Appellees by United States Postal Service first class/priority mail upon the following named person(s):

Abeeb Balogun
172-17 Jamaica Ave., #5B
Jamaica, NY 11432

*/s/ David Lawrence III*